| 75 | 219 |
|---|---|
| 35a | 204 |
| 75 | 219 |
| 37a | 524 |
| 75 | 219 |
| 39a | 675 |
| 40a | 622 |
| 75 | 219 |
| 42a | 598 |
| 75 | 219 |
| 104 | 47 |
| 44a | 41 |
| 44a | 286 |
| 44a | 437 |
| 44a | 561 |
| 75 | 219 |
| 65a | 5 |
| 65a | 120. |
| 75 | 219 |
| 141 | 226 |

## DAVIS, *Appellant*, v. SMITH.

1. **Married Woman's Obligation**: ITS GENERAL NATURE. It is well settled in this State that if a married woman executes a note and nothing to the contrary is expressed, the creditor may by a proceeding in equity have it satisfied out of her separate property. But it is not a lien, or, strictly speaking, a charge upon the property, nor does it bind her personally. It simply constitutes a foundation for a proceeding in equity by which her separate property, but no other, may be subjected to its payment.

2. ——— : ADMINISTRATION. The obligation of a married woman, even though she had a separate property when she contracted it, cannot after her death, be proved against her estate in the ordinary way. The circuit court alone can adjudicate such a demand.

3. ——— : EFFECT OF HER DEATH. While the death of a married woman does not extinguish the right of a creditor to satisfaction of an obligation incurred by her while *covert*, out of what was her separate property, neither does it give him a right to satisfaction out of any other of her property. This is subject to the debts of her general creditors, if she have any, while they, equally with the special creditors, have a right to resort to whatever was her separate property for payment of their demands.

4. **Ancestor's Pleadings, not Binding on Heirs.** Heirs made parties to a suit in place of their deceased ancestor, are not bound by an answer filed by the ancestor admitting that he executed the note sued on.

This case was decided at the April term, 1881. The reporter did not receive it in time for publication in its regular order.

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

REVERSED.

C. W. *Thrasher* for appellant.

The note sued on was clearly a charge and lien on the separate property of the defendant Harriet Smith. *Claflin v. Van Wagoner*, 32 Mo. 252; *Whitesides v. Cannon*, 23 Mo. 457; *Segond v. Garland*, 23 Mo. 547; *Coats v. Robinson*, 10 Mo. 757; *Schafroth v. Ambs*, 46 Mo. 114; *Pemberton v. Johnson*, 46 Mo. 342; *Tucker v. Gest*, 46 Mo. 339; *Bruner v. Wheaton*, 46 Mo. 363; *Kimm v. Weippert*, 46 Mo. 532; *Miller v. Brown*, 47 Mo. 504; *King v. Mittalberger*, 50 Mo. 182; *Metropolitan Bank v. Taylor*, 62 Mo. 338; *Lincoln v. Rowe*, 51 Mo. 571; *Morrison v. Thistle*, 67 Mo. 596; *Staley v. Ivory*, 65 Mo. 74; *Meyers v. Van Wagoner*, 56 Mo. 115. Every material allegation of plaintiff's petition, not denied by the answer of defendants is, for the purposes of this action, to be taken as true. R. S., § 3545; *Kansas City Hotel Co. v. Sauer*, 65 Mo. 279; *Bartholow v. Campbell*, 56 Mo. 117; *Marshall v. Ins. Co.*, 43 Mo. 586; *Tomlinson v. Lynch*, 32 Mo. 169; 2 Whart. on Ev., § 1112. The answer of Harriet Smith is taken as the answer of the minor defendants, who at her death succeeded to her interest in the real estate sought to be charged, and are her successors in interest in this suit. R. S., § 3667. The admissions in her answer are competent evidence in this suit. 1 Whart. on Ev., §§ 226, 1156, 1219; *Crane v. Gough*, 4 Md. 316. At the death of defendant Harriet Smith her heirs at law were her only proper and necessary successors as parties to this suit. R. S., § 3663; *Belcher v. Schaumburg*, 18 Mo. 189; *Fine v. Gray*, 19 Mo. 33; *Brewington v. Stephens*, 31 Mo. 38; *Jones v. Skipworth*, 9 Beav. 237; *Waldorph v. Bortle*, 4 How. Pr. 358; *Milligan v. Milledge*, 3 Cranch 220, 228; Edwards on Parties, pp. 122, 132; 2 Van Santv. Eq. Prac., (3 Ed.) pp.

75, 76; 1 Van Santv. Plead., pp. 180, 181; Story's Eq. Plead., (Redf. Ed.) §§ 175, 354a, 364; Wells' Sep. Prop. of Marr. Wom., § 613; *King v. Little*, 77 N. C. 138. The plaintiff in this suit seeks only to enforce his claim against the land described in the petition as the separate property of the defendant Harriet Smith. No personal judgment could in any event be rendered against her in this suit. *Weil v. Simmons*, 66 Mo. 617; *Lincoln v. Rowe*, 64 Mo. 138; *Gage v. Gates*, 62 Mo. 412; *Wernecke v. Wood*, 58 Mo. 352; *Caldwell v. Stephens*, 57 Mo. 589; Wells' Sep. Prop. of Marr. Wom., § 619. The evidence shows that she had no personal estate whatever, and, therefore, there was no need of an administrator of her estate; and if one had been appointed he could have had no interest in this suit, as it relates solely and entirely to the enforcement of a specific lien on real estate, which had descended to the heirs of the deceased defendant.

*George Hubbert* for respondents.

There having been no proof of the execution of the note, plaintiff was not entitled to a decree. Wag. Stat., 1050, § 5; Ib., 1046, § 46; *Brickenkamp v. Rees*, 3 Mo. App. 585; *s. c.*, 69 Mo. 427; 1 Whart. Civ. Ev., (2 Ed.) § 838. Mrs. Smith being dead, appellant must pursue the ordinary remedy of a creditor against the property and estate of a deceased debtor. Upon death, intestate, of a married woman having separate property, the realty descended, at common law, to the heir; and the personalty the husband took absolutely through the medium of administration by himself. 2 Redf. on Wills, *179. But in this State all her property is liable to creditors of the intestate, in satisfaction of debts, and the remainder goes to heirs. *Leakey v. Maupin*, 10 Mo. 368; *Gillet v. Camp*, 19 Mo. 404; *Coughlin v. Ryan*, 43 Mo. 99; *Welch v. Welch*, 63 Mo. 60. Since the death of Mrs. Smith, the property in question has no peculiarities attending it, and must be reached as any other

property she may have died seized of; for separate property accommodates itself to the changes in relations of its owners, freeing itself from trust hands with removal of coverture.  *Roberts v. Moseley,* 51 Mo. 286; *Baker v. Nall,* 59 Mo. 268; *Metrop. B'k v. Taylor,* 53 Mo. 444; Hill on Tr., *419; Story Eq., §§ 1384, 1397; Williams on Exrs., *742, note k; 2 Bishop Marr. Wom., § 554. Plaintiff cannot follow the specific property on the ground that he has a lien. The execution of a contract which equity will charge upon separate property cannot be deemed an equitable mortgage or a lien of any kind, such as needs to be enforced by a decree against any particular property after the marriage relation has ceased. *Owens v. Dickenson,* 1 Craig & Phil. 48. True, during life and coverture no general, personal judgment can be rendered against a *femme covert* on account of obligations contracted during coverture, and hence the necessity for the offices of equity; but after her death all her creditors, whether their claims be founded upon obligations entered into during or before coverture, stand on the same ground, and obligations will be paid out of what had been sole and separate property, which in her life could not have been charged against it. *Gregory v. Lockyer,* 6 Madd. 90; *Anon.,* 18 Ves. 258; *Norton v. Turvill,* 2 P. Will. 144; Roper's Husb. and Wife, ch. 21, § 3, pp. 238, 245. If all creditors be on the same footing, they must pursue the same remedies to obtain satisfaction. If the note was at all the obligation of Harriet Smith, the holder was her creditor, and it, after her death, was a demand against her estate and must be collected accordingly, for "all demands against the estate of any deceased person" are provided for by statute. 1 Wag. Stat., 101, § 1; 102, §§ 3, 4, 8, 9; 105, § 29. That plaintiff is to be regarded in the light of a creditor is shown by the following authorities: Story Eq., § 1401; *Morrison v. Thistle,* 67 Mo. 601; *Gay v. Ihm,* 69 Mo. 586; *DeBaun v. Van Wagoner,* 56 Mo. 347; *Owens v. Dickenson, supra; Ozley v. Ikelheimer,* 26 Ala. 332; *Caldwell v. Sawyer,* 30 Ala. 285;

*Walker v. Smith*, 28 Ala. 569; *Collins v. Rudolph*, 19 Ala.
616; *Gunn v. Samuels*, 33 Ala. 201; *Cowles v. Morgan*, 34
Ala. 535; *Coats v. Robinson*, 10 Mo. 757; *Whitesides v. Cannon*, 23 Mo. 457; *Claflin v. Van Wagoner*, 32 Mo. 252;
*Schafroth v. Ambs*, 46 Mo. 114; *Miller v. Brown*, 47 Mo.
504; 10 Cent. L. J. 404; Peachey Marr. Settl., 269, *et seq.*;
Bishop Marr. Wom., §§ 857, 858, 864; *Taylor v. Meads*, 34
L. J. N. S. Ch. 203, 207. If, in contemplation of equity,
the holder of the note is a creditor, and decedent made an
obligation which constituted her a debtor, these relations
are as fully cognizable in our probate courts as in any other.
*Titterington v. Hooker*, 58 Mo. 598. So, it would be no objection to our position if, formerly, such cases were proper
subjects of chancery jurisdiction, since the jurisdiction of
probate courts would seem to be exclusive, and, at the
utmost, the circuit court could go no further than to ascertain the debt and certify its judgment to the probate court
for classification and payment. *Wernecke v. Kenyon*, 66
Mo. 275; *Titterington v. Hooker*, 58 Mo. 593; *Pearce v. Calhoun*, 59 Mo. 271. How, then, could appellant have any
valid judgment in this case, for any purpose, without having the administrator in court?

HENRY, J.—This was a suit originally against Harriet
and Patrick R. Smith, her husband, and Robert, as trustee
of the said Harriet, wherein it was sought to charge the
separate estate of Mrs. Smith with the payment of the
balance of a note executed by her, her husband and her
said trustee, payable to the plaintiff. Mrs. Smith died
while the suit was pending and after defendants had answered, each admitting the execution of the note, and the
husband and wife alleging her coverture when the note
was executed; that she received no consideration for her
signature; that it was procured by fraud on the part of the
plaintiff; that it was not voluntarily executed by Patrick,
and that Harriet signed by compulsion of her husband, to
which plaintiff was a party, and that she did not thereby

intend to charge her separate estate with payment of the note. Robert's answer admitted his execution of the note as trustee of said Harriet. In February, 1875, plaintiff filed a replication to this answer, denying all its defensive allegations. Subsequently Harriet died, and this suit was revived against her heirs at law, and Geo. Hubbert was appointed their guardian *ad litem*, and as such filed an answer denying all the allegations of the petition, to which no replication was filed. The cause was taken from the circuit court of Newton county, where it originated, to Greene county, by change of venue, where, on a trial at the October term, 1877, defendant had judgment, from which plaintiff has appealed.

On said trial plaintiff read as evidence those parts of the answer of the original defendants admitting the execution of the note, the note itself, a deed conveying the property in question to Robert as trustee for the separate use, etc., of Harriet Smith, and proved that she had no other estate, and that there had been no administration on her estate. No objection was made to the admission of any of the evidence, and the judgment must have been based upon the conclusion that the circuit court had no jurisdiction of the cause, Mrs. Smith having died while it was pending. In other words, the argument made here must have prevailed in the circuit court, that, after the death of Mrs. Smith, the plaintiff had a legal demand which he could have presented for allowance in the probate court, or that the administrator of her estate, instead of the heirs, was the proper party, even if the circuit court could retain, because it had once acquired, jurisdiction. The question is, therefore, presented, whether the plaintiff had a claim against Mrs. Smith or her property, of which the probate court had jurisdiction.

As to the precise nature of the obligation of a *femme covert* who had a separate estate when it was incurred, the

1. MARRIED WOM-AN'S OBLIGATION: its general nature

authorities are not agreed, but are in inextricable confusion. It is well settled in this

State that if she execute a note, and nothing to the contrary is expressed, the creditor may, by a proceeding in equity, have it satisfied out of her separate property. *Whitesides v. Cannon,* 23 Mo. 457. But it is not a lien, or, strictly speaking, a charge upon the property, nor does it bind her personally. All that can be said of it is, that it is an anomalous obligation, neither binding her nor her estate, general or separate. but only constituting a foundation for a proceeding in equity, by which her separate property may be subjected to its payment, and until a decree to that effect be rendered it is neither a lien nor a charge upon the estate. If she own, in addition to her separate property, other property in which she has no separate estate, even where a court of equity enforces payment of the obligation out of the separate estate, it will not, for any deficiency of the separate estate, allow a resort to her other property.

But the proposition urged here is, that after her death, that becomes a personal obligation which, when entered into, was no obligation at all. Except with respect to her separate property, the obligation was a nullity both at law and in equity; and at law, even the ownership by her of a separate property gave it no-validity whatever. "At law, she is during her coverture generally incapable of entering into any valid contract to bind either her person or her estate. In equity, also, it is now clearly established, that she cannot, by contract, bind her person or her property generally. The only remedy allowed will be against her separate property. The reason of this distinction between her separate property and her other property is, that as to the former she is treated as a *femme sole,* having the general power of disposing of it; but as to the latter, all the legal disabilities of a *femme covert* attach upon her." Story's Eq., §.1397.

In *Sockett v. Wray,* 4 Brown Ch. 485, the Master of the Rolls. said : " It is argued that supposing her a *femme sole,* she could do the act; there the single woman can act, be-

2. —— : administration.

cause she can bind herself personally; but is there any contract that this married woman could enter into, that would bind her after the termination of the coverture? If she gave a bond, could she be sued upon it after the coverture? Certainly not. A man or a single woman, as they can bind themselves personally, may bind their executors and administrators; but it is not so of a married woman." In *Aylett v. Ashton*, 1 Mylne & Craig 105, which was a suit to compel the specific performance of an agreement made by a married woman with respect to her separate estate, Lord Cottenham, Master of the Rolls, referring to *Francis v. Wigzell*, 1 Madd. 258, said : "It was there decided, and clearly in conformity with all previous decisions, that the court has no power against a *femme covert, in personam*, but that if she has separate property, the court has control over that separate property. In all cases, however, the court must proceed *in rem*, against the property. A *femme covert* is not competent to enter into contracts so as to give a personal remedy against her. Although she may become entitled to property for her separate use, she is no more capable of contracting than before; a personal contract would be within the incapacity under which a *femme covert* labors." If the contract of a married woman could, with respect to her separate property, be treated as a personal obligation even in equity, we see no reason why it should not be specifically enforced to the extent of that property ; and that it was refused by Lord Cottenham in the case of *Aylett v. Ashton, supra,* conclusively shows that it was not regarded by him as a personal obligation in any sense whatever. In *Parker v. Lambert,* 31 Ala. 89, it was held that " a married woman, owning a separate estate by deed, living apart from her husband by agreement with him, could not, at common law, make any contract upon which either she or her personal representative could be sued at law." The contrary was held by this court in *King v. Mittalberger,* 50 Mo. 184, but no authority was cited in support of the doctrine there announced, and the argument is far

from satisfactory. This case was followed by the court of appeals in *Hooton v. Ransom*, 6 Mo. App. 19, and *Staley v. Howard*, 7 Mo. App. 380; but as *King v. Mittalberger* is in conflict with the general current of authority, both in the United States and in England, and with the principles upon which the separate property of a *femme covert* is charged in equity, we are constrained to recede from the doctrine therein announced, and bring this court in harmony with the better considered adjudications elsewhere.

It follows from the foregoing premises that when Mrs. Smith died, the note in suit was not a debt against her for which her personal representative could be sued, and it could not be allowed in the probate court against the general assets of her estate in course of administration. It is no demand against her general estate. It could not be allowed as such. It was not a lien upon her separate estate. The right of the plaintiff to satisfaction out of her separate property is a creation of equity, recognized nowhere else, and enforceable nowhere else.

The probate court could in no manner adjudicate the demand, not because it has not jurisdiction of equitable as well as legal demands against the estate, but by reason of the special provisions regulating the exercise of the jurisdiction conferred upon that court. All demands are to be classed in the first, second, third, fourth, fifth or sixth class, and to be paid in proportion to their amounts, and no demand of any class can be paid until all previous classes are satisfied. One holding the obligation of a *femme covert* would have no right to resort to any other property of her estate, and if his demand were placed in either of the classes, he might, if the provisions of the statute were strictly observed, get satisfaction of his demand out of the general property to the exclusion of other creditors who, as to that property, have a preference over him. Specific provisions are made for those cases in which demands are liens upon any of the property of the testator or intestate, and none of these provisions applies

3. ——: effect of her death.

to the plaintiff's claim, for he has no lien.   He has no demand against the estate for which he could sue Mrs. Smith's executor or administrator, and has no remedy except that to which he has resorted.

Thus far we encounter no difficulty; but here one occurs, which should be met by an amendment of the administration law, inasmuch as in this progressive age it is not unusual for married women to execute promissory notes and incur other pecuniary obligations, and to hold property for their sole and separate use.   When a *femme covert* dies, her separate property ceases to be such, and stands · upon the same footing as any other she may have owned.   While her death does not extinguish the right of one to satisfaction of an obligation incurred by her while a *femme covert*, out of what was her separate property, he has no right to satisfaction out of any other of her property, which is subject to the debts of her general creditors, if she have any, and she may have such, while they, equally with the special creditors, have a right to resort to whatever was her separate property for payment of their demands.   If, then, the court should find for plaintiff, what judgment shall it render ?   If it decree the sale of this property for payment of plaintiff's demand, and it should thereby be paid, and there should be other creditors, either general or special, he would obtain a preference to which he is not entitled over either class.   Nor can the court, in this cause, determine whether there are or not other creditors; for unless parties to the proceedings, if there were any they would not be bound by such adjudication.   It has been ascertained in this case that Mrs. Smith was possessed of no other property; but it has not been, nor could it in this proceeding be, conclusively ascertained that she owed no other debts.   The circuit court cannot bring other creditors in and take charge of the administration of the estate by allowing demands against it, and making final distribution. That jurisdiction has been confided to the probate court. *Titterington v. Hooker*, 58 Mo. 593.   That there is here

probably but one creditor, and only this specific property, cannot change the principle or warrant an assumption by the circuit court of probate jurisdiction. Therefore, all that court can do, if it finds for the plaintiff, is to enter a decree charging this property with plaintiff's demand— with directions to the probate court of the proper county, where letters of administration on the estate shall have been granted, to have the demand paid out of this property, if no other creditors of the estate appear within the time allowed by the administration law. If other creditors appear and have claims allowed, then this demand of plaintiff shall be placed in the class to which it would be entitled under the administration law, if it were an ordinary demand against the estate. There being no other property, it stands upon the same footing as other unpreferred demands against the estate. This would not be proper if there were other property and general creditors of the estate. In such case the directions should be such that the preference of the general creditors in the assets, other than what was her separate property should be preserved, and any preference of the special creditor in the latter should be prevented. If the other general assets should be exhausted and leave the general creditors unpaid in whole or in part, they would have an equal right to the payment of their unpaid balances out of such other estate with the special creditor for the amount of his claim. That is, his demand and the respective balances due them would be paid in proportion to the amount then due and unpaid to said special and general creditors respectively.

With respect to the pleadings, plaintiff, under section 5, Wagner's Statutes, page 1050, must prove all material 4. PLEADINGS, NOT allegations put in issue by the answer of the BINDING ON HEIRS guardian *ad litem.* The pleading of Mrs. Smith is to be taken as that of her representative, unless the latter see proper to file amended pleadings. Here the guardian, for his ward, filed an answer denying all the allegations of the petition, and thereby put plaintiff to

proof of the same, as if there had been no answer filed by Mrs. Smith. If objection had been made, it would have been error to allow plaintiff to read portions of Mrs. Smith's answer as evidence, or to read the note without proof of its execution. Mrs. Smith's answer, without an affidavit denying the execution of the note, was not sufficient to put plaintiff to proof of its execution; but the heirs are not presumed to know whether their ancestor did or did not execute it, and, therefore, could not be required to make such an affidavit in order to impose upon the plaintiff the burden of proving its execution. Judgment reversed and cause remanded, SHERWOOD, C. J., and NORTON, J., dissenting.