CASE 68—EQUITY—SEPTEMBER 14, 1882.

# Grayson v. Tyler's adm'x, &c.

### APPEAL FROM LOUISVILLE CHANCERY COURT.

F. W. S. G. devised to his wife. and mother portions of his estate during ·
their respective lives, and upon their deaths the residue to be divided
between his "nephews and nieces then living that are now, or may
before that time, be born." Both wife and mother are dead. In.
1851 appellant, a nephew, before the death of his mother, sold and
assigned his interest in the estate to John W. Tyler.

1. *Held*—that appellant's interest in the estate was the subject of sale and
transfer, and his conveyance is valid in equity, passing to T. all that.
he was entitled to after the death of the wife and mother of the ·
devisor.

2. It is not satisfactorily proved that Tyler was appellant's attorney when.
the sale and assignment was made.

HARRISON & McGRAIN AND R. W. WOOLLEY FOR APPELLANT.

1. The uniform ruling of this court has been, that no sale or transfer is .
valid unless the thing or right or interest sold or transferred has a
potential or actual existence in the vendor.   A possibility is not‑
subject to sale or transfer.   (2 Met., 129; Washburn on Real Prop-·
erty, 4th ed., vol. 2, pp. 549, 562, 590, 592; Bouv. Inst., vol. 2, 286;
Shep. Touchstone, 321; Bac. Ab., tit. Release, Greenleaf W. Cruise,.
33; 120 Mass., 343; Preston, 95, 205; 11 Wend., 123; 9 R. I., 145; 13 :
Wend., 178; 19 N. Y., 384; 11 Paige, 290.)

2. In Wren v. Hynes, 2 Met., 129, in 5 Dana, 411, and in 11 Bush, 656,
this court have fully discussed the distinction between vested and
·contingent remainders, and the definition· of Blackstone of a contin-
gent remainder is approved by this court.

3. It is abundantly proved that, at the time appellant made his sale and:
assignment to John W. Tyler, the latter was his attorney. ˙A court
of equity will not tolerate such a transaction.. (Story's Eq. Jur., 218, .
219, 311, 314.)

RICHARDS & BASKIN FOR APPELLEES.

1. Courts of equity do not, like courts of law, confine themselves to the ·
giving of effect to assignments of rights and interests which are·
absolutely fixed or *in esse*. On the contrary, they support assignments :
not only of *choses* in action, but of contingent interests and expectan-
cies.   (1 Vesey, 409.)

2. All contingent and executory interests are assignable in equity, and if ˙
made for a valuable consideration, will be enforced.   (4 Kent's :
Comm., 261; 11 Wend., 111; 1 Hoff. Ch'y, 282; 5 Denio, 664; 11;

Paige, 290; 19 N. Y., 385; Gen. Stat., chap. 63, art. 1, sec. 6; Rev. Stat., chap. 80, sec. 6; Sale v. Crutchfield, 8 Bush, 638; 8 and 9 Vic., chap. 106, sec. 6; 3 Wash., 89, 302; Burrill on Assignments, 131; Breckinridge v. Churchill, 3 J. J. Mar., 13; 1 Iredell, N. C., 566; 2 P. Will., 181; 1 Ves., 381; 3 D. & E., 88; 7 Texas, 27; 2 Burr. Penn., 330; 2 Story, 639; 2 Hill's Ch'y, S. C., 187; 2 Met., 477; 2 Duv., 134.)

3. There is no evidence showing that John W. Tyler was appellant's attorney when the assignment was made.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

Frederick W. S. Grayson, sr., died, leaving a will by which he made devises to his wife and mother of portions of his estate during their respective lives, "and upon their deaths the said residue to be divided among my nephews and nieces *then living*, that *are now* or may before that time be born." His widow and mother are both dead, and this controversy arises as to the interest of one of his nephews in that part of the estate devised to his widow. The nephew, John C. Grayson, who was living at the death of the devisor, on the sixth of September, in the year 1851, sold and transferred to John W. Tyler "all his right, title, and interest, accrued and to accrue, of, in, and to the estate of Frederick W. S. Grayson, deceased, as one of his nephews and devisees." The consideration was seven hundred dollars cash in hand, paid at the date of the agreement. The interest transferred was in personalty.

John Tyler died, and this controversy is between Mary Tyler, his administratrix, and John C. Grayson, the latter claiming that at the date of the sale and transfer to John Tyler he had nothing to assign. That his right to the property or interest in it depending upon his surviving the life-tenant, the mere possibility of survivorship did not give to him either a vested or contingent interest. It is further maintained, that a contingent remainder is not capable of

alienation where the person who is to take is not ascertained, or because the remainder may be defeated before it becomes vested.

The contingency upon which the claim of the appellant could be defeated, and no other, was that of his dying before the life-tenant. The nephew and nieces of the devisor living at his death, and thereafter born, such of them as might be living at the death of the life-tenant, were to have the remainder interest. This nephew was living at the testator's death, and had an interest in the estate devised that no one could divest him of by will or deed, and nothing could defeat the devise, so far as he was interested, but the happening of the contingency, viz: his dying before his mother.

In the briefs of counsel, as well as in the oral argument, cases were cited sustaining the proposition that no interest would pass to the assignee or vendee of the contingent devisee in a case like this; and the reported cases are not easily reconciled on the subject; but upon an examination of the more modern authorities, and in fact in the elementary books, it will be found that such contingent interests may be transferred or assigned in equity.

There is a manifest distinction between this case and a mere possibility, such as the expectation or presumption that the child will take from the father. In the latter case the possibility is not coupled with an interest. The estate of the father may be sold or given to some other person, the child may die, and, in fact, there is nothing to sell or convey, and it necessarily follows there is nothing upon which the conveyance or transfer can take hold of.

The transfer in this case is to the *nephews* and *nieces now born* and to be *hereafter born*, such as may be living at the

;death of the life-tenant. This nephew was living when the testator died, and the clause of the will under which· he claims was in fact a devise to him of an interest to be owned and enjoyed by him in the event of his surviving the mother.

In the case of Jackson v. Walward, 13 Wendell, a majority of the court held that no title passed under an assignment or conveyance, that case being analogous to the case being considered; but the soundness of the rule was doubted in subsequent opinions emanating from judges of great ability and presiding in courts of the same state. (See 1st Hoffman's Chancery Rights, 282, and 11th Paige, 289.)

It is true that, in the subsequent case of Edwards v. Varick, 5 Denio, the doctrine of the case in 13 Wendell was again announced, and upon the idea "that the interest of the executory devisee in such cases was a mere possibility, and not in judgment of law coupled with an interest." We think it is something more, and while it is an interest that will not descend to the heir of the contingent remainderman unless he survives the life-tenant, the possibility that he may die before the life-tenant—and this is the only contingency— would exist in every case where the right to the use and enjoyment of an estate is postponed until the termination of a particular preceding estate. Where there is a vested interest, it will ordinarily descend to the heir; but it is plain, we think, when an estate is devised to one in being, his right to depend upon his surviving another is something more than a mere naked possibility. The death of the primary devisee will alone vest him with the absolute title, but yet the contingent interest is something that no one can divest him of, and is certainly of more value and a greater interest than the mere expectancy or possibility that some one may die without a will, or without conveying his· property

or leaving property that his next of kin may inherit.. The doctrine of the common law is, that a contingent. remainder cannot be passed or transferred by a conveyance at law before the contingency happens otherwise than by way of estoppel by fine, or by a common recovery; but contingent estates were assignable in equity. (See Fearn on Remainders, page 366.)

Under the statute of wills the power to devise a contingent interest was given under a construction of the statute to the effect that a contingent right was an interest in the estate (Fearn on Remainders, page 367), and the right to pass contingent interests in chattels and personal estate by testamentary disposition was recognized by the rule of common law.

In this case the devise is to a nephew living: He is designated by the language my nephews and nieces *now living*, or may before that time be born. If the devise had been to my nephew, John C. Grayson, in the event he is living at the death of his mother, the person to take the estate would not be more plainly designated than when it is. given to such of his nephews as may be living at her death,. the nephew being in existence at the death of the testator. There is a right and an interest in such a devise that is far more certain and fixed than a mere naked possibility. All others are excluded for the time being from any right to his contingent interest, and this right of his, by reason of the devise, may ripen into a perfect title. Besides,. the tendency of modern decisions, as well as that in legislation, is. to facilitate the transfer and alienation of such estates: Under both the Revised and General Statutes "any interest in or claim to real estate may be disposed of by deed or will in writing;" and while this statute cannot affect the:

rights of these parties, or control the decision of this case, it is, we think, well settled that an assignment of such interests in goods and chattels was not forbidden by any common law rule, and certainly equity will enforce the agreement. "A contingent legacy which is to vest upon some future event, such as the legatee coming of age, may become the subject of assignment or a contract of sale." (Story's Equity Jurisprudence, vol. 2, page 234.)

This same author says that a mere naked possibility or expectancy may become the subject of a contract, and while this may be carrying the equitable doctrine too far, a question not, however, before us, still it shows the extent that elementary writers have gone on the subject without the aid of statutory provisions.

It follows, therefore, that the contingent interest of the appellant was the subject of transfer and sale, and that John. Tyler became the owner by reason of the agreement of September 26, 1851.

The appellant further maintains that John Tyler was his attorney in the action for the settlement of the devisee's estate, and had speculated upon his rights in making the purchase. It is a matter of doubt from the record whether John Tyler was the attorney when the agreement was entered into, and besides, the $700 was paid him for his interest twenty-five or thirty years prior to the institution of the present action, and interest upon that sum to the present time would exceed, or nearly so, the amount directed to be paid by this judgment to John Tyler's administratrix. Regardless of this, however, we think the judgment was proper, and that the right passed by reason of the contract.

The judgment below is affirmed

(3 Washburn, 89, 302; Wheeler v. Wheeler, 2 Metcalfe; 17 Texas, 167; 2 Story's Equity, sec. 1040.)