CRESCENT CITY MOTORS, LIMITED, *v.* HENRY NALAIELUA AND HIS WIFE, MRS. ANNIE NA-LAIELUA, AND O. T. SHIPMAN, TRUSTEE.

No. 1943.

Argued March 21, 1930.    Decided May 1, 1930.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.
(Parsons, J., dissenting in part.)

This is a suit in equity, brought by a creditor to sub-

ject equitable assets of the debtor to the payment of a judgment. The parties filed before the trial court a statement of facts agreed upon by them. This showed that the complainant had duly recovered in a court of law having jurisdiction of the matter a judgment against the respondent Henry Nalaielua in the sum of $1361.50; that a writ of execution had been issued and returned unsatisfied; that the respondent has no property within the Territory of Hawaii which can be subjected to a levy of execution "unless the interest of said Henry Nalaielua in and to the property hereinafter referred to is subject either to a legal or equitable execution;" that the judgment is still wholly unsatisfied; that on January 24, 1921, Makuahine Kekahiko, the mother of Henry Nalaielua, Kaiu Moi and John T. Baker conveyed certain property to O. T. Shipman as trustee by a certain trust instrument, a copy of which is attached to the stipulation; that ever since the execution of the deed of trust the trustee has been and still is in possession of the lands therein described and has been and still is collecting the rents and revenues derived therefrom "and is generally executing the trust" by the deed created; that Makuahine Kekahiko, Henry's mother, died intestate on November 17, 1924, leaving surviving her as her sole heir her son Henry; "that ever since the date of the death of the said Makuahine Kekahiko" Henry "has been entitled to receive from the said trustee one-third of the net income and revenues derived from the property described in said trust instrument;" that the annual net revenue derived from the property to which Henry became entitled upon the death of his mother is approximately $550.00; and that the value of one-third of the property conveyed in trust is approximately $9000.00.

Upon these stipulated facts the trial judge at the request of both parties reserved for the consideration of this court the following questions: "(1) What estate, if any,

became vested in the said O. T. Shipman, trustee, upon the execution and delivery to him of the trust instrument above referred to? (2) What estate, if any, became vested in the said Henry Nalaielua upon the death of his mother as aforesaid? (3) Is the estate, if any, which became vested in the said Henry Nalaielua upon the death of his mother of such a nature as to give to a court of equity jurisdiction to order its sale for the satisfaction of the judgment hereinabove referred to under the stipulated facts in this case? (4) Is the complainant herein entitled to the relief prayed for in and by its bill of complaint?"

The trust upon which the conveyance is made is therein expressed as follows: "Upon trust to the said O. T. Shipman, for the use of the said parties of the first part, to lease, or rent the above described property, and to receive the rents, issues and profits thereof, including crops of cane, as the same now or hereafter shall become due and payable, deducting therefrom all sums of money paid on account of taxes, insurance, water, and sewer rates, interest, commissions, attorney's fees, whether the same be for advice or for the instituting or defending any and all suits or actions at law or in equity, when such may be deemed necessary to be obtained, brought and defended, and all such other sums and expenses incurred as may be necessary or proper for the preservation, protection and management of the said property; to apply and to equally distribute and divide between, and to give to the use of the said parties of the first part, the overplus, if any, during the term of 20 years from the date hereof, and after said term of 20 years to convey the said property to the said parties of the first part or to the survivors of them and to the heirs of each of all, if all or any of them should die before the expiration of the said term."

Answering the first question, it is well settled that

"trustees take exactly the estate which the purposes of the trust require." *Doe* v. *Considine*, 6 Wall. 458. In view of the fact that the trustee is by this instrument required not only to manage the property, to receive its rents and profits, to pay the expenses and to distribute the net proceeds amongst those entitled thereto, but also to execute at a time stated a conveyance of the corpus of the property itself, he must be deemed to have the legal title to the property, the equitable title being in those who are in the deed named as beneficiaries of the income and of the principal. The first question and the answer thereto do not appear to be of any particular importance in this case. No one is disputing the title or the powers of the trustee. The sole question is that between a creditor and one of the supposed beneficiaries, as to what interest, if any, that beneficiary has in the property and, secondly, as to whether it is reachable by a creditor by a bill in equity such as this.

As to the right to the income during the twenty-year period of the trust, no issue is presented. The first of the two main questions raised is as to the nature and the extent of Henry's interest, if any, in the principal of the property conveyed to the trustee. The grantors' direction is, "after said term of 20 years to convey the said property to the said parties of the first part" (the three grantors) "or to the survivors of them and to the heirs of each of all, if all or any of them should die before the expiration of the said term." In other words, the direction is that at the end of the twenty years the trustee shall convey the property to the three grantors, if they are all living at that time, or if they are not all then living, then to such of them as are living and to the heirs of any one or more who do not survive until that date. And the sole question in this regard is whether by the word "heirs" the grantors meant those who under the law would take from

them at their deaths or those who under the law would take from them if they were to die at the end of the twenty years.

Various so-called rules of construction have been resorted to by courts in the effort to ascertain the intention of testators as expressed in their wills and of grantors as expressed in their deeds. One of them, for example, is that when a devise or grant is given to "heirs" of the testator or grantor *prima facie* that is to be taken to mean those who would be the heirs at the death of the testator or grantor as the case may be, unless it is apparent from the instrument that those were intended who should be the heirs at some later period of distribution. This rule was doubtless evolved out of the very meaning of the word "heirs." Ordinarily that word means those who under the law would take the property of a decedent at his death, but the word is susceptible of the meaning, and it has often been so construed by courts, that those are intended to take who would be the heirs at a later named period of distribution if the testator or grantor had lived to that time. Another rule of construction, one which was adopted and applied in the case of *Auld* v. *Andrade,* 31 Haw. 1, is that "when under the provisions of a will a gift to a class is postponed, either to a particular time or pending the termination of a preceding estate, as a rule those members of the class, and those only, take who are in existence at the arrival of the time for distribution, as at the death of the life tenant, unless the particular language used confines the gift to those in existence at the testator's death or who are in existence at the date of the will." Each of these rules, like all other rules of construction, is to be applied only when it serves to aid in the carrying out of the intention of the testator. When its application would serve merely to frustrate that intention, the rule is not to be applied. In the case at bar the grantors have

said in unambiguous language that the conveyance of the corpus is not to take place until the end of the twenty-year period there named and that it is to take place at that particular time. The trustee, when that day arrives, will be confronted with the question, to whom is it my duty to convey now? If and in so far as the original grantors shall then be living that duty will be obvious. It will be to convey to each of them thus surviving one-third of the corpus. If one of them shall not survive, to whom shall he convey? The answer expressed in the deed is, "to the heirs of the non-survivor." This we understand to mean the persons who at that time will be the heirs of the decedent. It certainly was not intended by the decedent grantor that the conveyance at the end of the twenty years should be to the heirs of his heir, for the statement is, quite to the contrary, that it must be to the heirs of the grantor. Let us take the facts as they have thus far developed. Makuahine Kekahiko, one of the grantors, has died, leaving as the one who was the sole heir at the time of her death her son Henry. Whether Henry has children does not appear. If he shall die before the end of the twenty years without having had issue and leaving only a widow whom he married after his mother's death, in other words, leaving a widow who was a total stranger to the mother, that widow being under the circumstances then existing Henry's sole heir, is it to be supposed that by the terms of this deed the mother meant to say that at the end of the twenty years her one-third interest was to go to this perfect stranger who was Henry's heir? In our opinion she has said with sufficient clearness that she meant that it should go to her own heirs, not Henry's heirs,—that is, to those who at the end of the twenty years would be her heirs.

Henry's interest at present is a contingent remainder which will become vested if he survives the twenty-year

period but which will disappear if he does not survive that period. See for example *Carter* v. *Davis,* 18 Haw. 439.

Is this equitable, contingent remainder reachable upon this creditor's bill in satisfaction of Henry's judgment debt to the creditor? "Any beneficial interest of a debtor in real or personal property which cannot be reached by regular process of law and is not expressly exempted by statute may be reached by a creditors' bill and subjected to the payment or satisfaction of the debt; and only such property may be so reached." 15 C. J. 1401. To the same effect is 5 Enc. Pl. & Pr. 447, 448. "At common law merely equitable interests in lands were not liable to be taken and sold on execution. They were considered only as creatures of equity and were only to be reached by resorting to a court of equity." 11 A. & E. Enc. L. 632. To the same effect are: 23 C. J. 340, 341; *Lessee of Smith* v. *McCann,* 24 How. 398, 404, 405; *Lenox* v. *Notrebe,* 15 Fed. Cs. (No. 8246c) 319, 321; *Sawyer* v. *Morte,* 21 Fed. Cs. (No. 12,401) 567; and *Doheny* v. *Atl. Dynamite Co.,* 41 W. Va. 1, 5. Hawaii has no statute modifying this rule of the common law.

As to whether a contingent remainder is alienable, descendible, devisable and reachable by a creditors' bill in equity the authorities are in conflict. Upon principle, we are of the opinion that it is alienable by voluntary conveyance of the owner. In the case at bar Henry's contingent remainder is not a mere possibility such as that of an heir expectant, the realization of whose hopes depends entirely upon the disposition or the whim of his ancestor. Henry's is a possibility coupled with an interest. His mother having died, it is definitely known that she left him as her sole surviving child and heir and that he will be her sole heir at the termination of the twenty-year period, provided only he is still living at that time. He has today a right and an interest which cannot be taken

away from him by others and which can be lost only by his failure to survive to the day named. Such an interest is property and has some value which increases as the termination of the twenty-year period approaches. "According to the better considered decisions, contingent remainders are alienable whenever the remainderman is in being." 21 C. J. 999; and n. 67a. "On reason, therefore, in any case where the remainderman is not ascertained, but where there is a person in existence in whom the remainder would immediately vest on the present happening of the contingency or the present determination of the particular estate, such person has a possibility coupled with an interest which he may transfer to another, subject, of course, to the same contingency by which it is affected in his hands. And this view is amply supported by authority as well as reason." 24 A. & E. Enc. L., 406. "The law of this state no longer rests in doubt regarding the right and power of contingent remaindermen to sell and convey their interest in real estate. This court has uniformly held that contingent remainders are alienable the same as are other estates." *Summet* v. *Realty Co.*, 208 Mo. 501, 514. See also *Grayson* v. *Tyler's Administratrix*, 80 Ky. 358. While Henry's contingent interest is not descendible or devisable because his death before the end of the period destroys his right to the land and because if he survives to the end of the period his interest becomes a vested remainder and the law relating to contingent remainders is no longer applicable, yet contingent remainders have been held to be descendible and devisable when by the terms of their creation they are not dependent upon survivorship to a stated time. "The rule is well settled that a contingent remainder of inheritance is transmissible to the heirs of the person to whom it is limited, if such person dies before the contingency happens, unless the remainder is so limited as to depend on the life of the

remainderman." 24 A. & E. Enc. L. 408.

If Henry's interest is alienable by him, as we think it is, it certainly should be seizable by a court of equity in satisfaction of the claims of creditors. To deny a creditor's petition for this relief would be to permit the respondent to sell immediately thereafter his interest by voluntary conveyance and to pocket the proceeds in defiance of the claims of his creditors and of the court. While his contingent interest is not of as great salable value today as it will be shortly before the end of the twenty-year period, that alone will not justify refusal of relief, for justice is due not only to the debtor but also to the creditor. The small value, if it is small, of the contingent interest, should have been thought of before the debt now sued on was incurred by the purchase of an automobile or other commodity. Nevertheless, any sale by order of the court of equity must be subject to the approval of the court; and approval should, as is customary, be withheld if the price realized is purely nominal or otherwise inadequate.

That property may be transferred by will or by deed upon such terms as to keep it beyond the reach of creditors of the donee may for the purposes of this opinion be assumed to be true. The intention, however, to transfer it with limitations of that nature must be indicated by the language of the instrument effectuating the transfer. It is not to be presumed from the mere fact of the devise or the conveyance. In one sense, perhaps, it is the intention of every testator and grantor to pass the property to the beneficiary or the grantee named in the instrument and not to his creditors; but it does not follow that whenever property is devised or conveyed it is beyond the reach of creditors of the devisee or grantee. The ordinary rule, on the contrary, is that the property of the beneficiary, in the absence of sufficiently expressed limitations, is not

only alienable by him, but may be levied upon by courts in satisfaction of his debts. In the language of the trust deed under consideration in the case at bar we can discover no indication whatever of an intent to place or to maintain the property beyond the reach of creditors. It is not a spendthrift trust and may well have been executed for the sole reason that the co-grantors, tenants in common, were unable to manage the property amicably.

The remedy at law by process of garnishment cannot be said to be adequate. From the statement of agreed facts it appears that Henry's share of the income amounts to $550 per annum. Under chapter 163, R. L. 1925, as amended by Act 262, L. 1925, only twenty-five per cent of this annuity, or $137.50 per annum, could be sequestered by garnishee process in favor of the creditor. The annual interest on the judgment, eight per cent of $1361, is $108.88. An order of garnishment, kept alive for the remaining eleven years of the trust period, would not satisfy as much as one-fourth of the principal of the debt plus accrued interest.

No reason is apparent for the appointment of a receiver. The appointment of a commissioner will suffice in order to reach, first, such income as may be due to the respondent and, second, his interest in the corpus of the trust.

*D. E. Metzger* (also on the briefs) for complainant.

*H. Irwin* (also on the briefs) for the trustee.

*C. S. Carlsmith* and *C. W. Carlsmith* (also on the briefs) amici curiae.

OPINION OF PARSONS, J., DISSENTING IN PART.

I cannot concur in the view that a contingent interest of a *cestui que trust* in property, under a trust deed, in the circumstances set forth in the majority opinion, can be subjected at the suit of the creditor to the satisfaction of a

judgment debt of such *cestui;* and this for the following reasons, namely, (1) that such a result would defeat the plainly apparent purposes of the trust as expressed in its terms and (2) that it would be inequitable to subject to forced sale an uncertain interest which at the present time can have none other than a merely speculative value.

"In England, ordinarily, both the right of voluntary alienation and the liability to involuntary alienation in behalf of creditors are regarded as necessary incidents of property, legal or equitable, and consequently any indication of a contrary intention in connection with the creation of a trust is nugatory. * * * In some states the English view, that one cannot be given an equitable interest, any more than a legal one, free from liability for his debts, has been asserted, but the later decisions have usually adopted a contrary view, to the effect that the intention of the creator of a trust, as indicated by the language used in its creation, that the interest of the *cestui que trust* shall not be liable for his debts, will be given effect by a court of equity." 3 Tiffany, Real Property (2 Ed.) Sec. 592, pp. 2319, 2320 and cases cited in footnotes 82 and 86. Under the English rule above referred to, if the interest given the beneficiary "is an absolute vested right to property which he may reach if he so desires, any attempt to restrain his right as to alienation or to defeat the right of his creditors, is unavailing." 3 Pom. Eq. Jur. (4 Ed.) footnote to Sec. 989, p. 2154. But even in England a different rule has been applied with reference to contingent interests. "The line on which the cases divide is clear and distinct and is simply this: Has the *cestui* such vested interest, or such absolute property rights that he can force the trustee to pay him or deliver goods or property to him? If he has such interest the assignee or creditor can obtain it, and if he has not, the assignee or creditor can obtain nothing.

The point is, not that one cannot be given an interest that will be beyond the reach of his creditors, but rather that one cannot be given an absolute property interest that will be beyond the reach of those creditors. This absolute property interest is the interest spoken of when it is said that a *cestui's* interest is subject to the demands of his creditors." 3 Pom. Eq. Jur. (4 Ed.) footnote to Sec. 989, p. 2156 and cases cited.

Referring to the English doctrine above announced the Supreme Court of the United States in *Nichols* v. *Eaton*, 91 U. S. 716, 725, said: "But, while we have thus attempted to show that Mrs. Eaton's will is valid in all its parts upon the extremest doctrine of the English Chancery Court, we do not wish to have it understood that we accept the limitations which that court has placed upon the power of testamentary disposition of property by its owner. We do not see, as implied in the remark of Lord Eldon, that the power of alienation is a *necessary* incident to a life estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. This doctrine is one which the English Chancery Court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine, that the owner of property, in the free exercise of his will

in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court. If the doctrine is to be sustained at all, it must rest exclusively on the rights of creditors. Whatever may be the extent of those rights in England, the policy of the states of this Union, as expressed both by their statutes and the decisions of their courts, has not been carried so far in that direction. It is believed that every state in the Union has passed statutes by which a part of the property of the debtor is exempt from seizure on execution or other process of the courts; in short, is not by law liable to the payment of his debts. This exemption varies in its extent and nature in the different states. In some it extends only to the merest implements of household necessity; in others it includes the library of the professional man, however extensive, and the tools of the mechanic; and in many it embraces the homestead in which the family resides. This has come to be considered in this country as a wise, as it certainly may be called a settled, policy in all the states. To property so exempted the creditor has no right to look, and does not look, as a means of payment when his debt is created; and while this court has steadily held, under the constitutional provision against impairing the obligations of contracts by state laws, that such exemption laws, when first enacted, were invalid as to debts then in existence, it has always held that as to contracts made thereafter, the exemptions were valid. This distinction is well founded in the sound and unanswerable reason that the creditor is neither defrauded nor injured by the application of the law to his case, as he knows when he parts with the con-

sideration of his debt that the property so exempt can never be made liable to its payment. Nothing is withdrawn from this liability which was ever subject to it or to which he had a right to look for its discharge in payment. * * * Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives,* who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of interrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived. These views are well supported by adjudged cases in the state courts of the highest character." To the same effect is *Spindle* v. *Shreve,* 111 U. S. 542. Quoting from p. 547: "It cannot be doubted, that it is competent for testators and grantors, by will or deed, to construct and establish trusts, both of real and personal property, and of the rents, issues, profits and produce of the same, by appropriate limitations and powers to trustees, which shall secure the application of such bounty to the personal and family uses during the life of the beneficiary, so that it shall not be subject to alienation, either by voluntary act on his part, or *in invitum,* by his creditors." See also *Seymour* v. *McAvoy,* 121 Cal. 438, 53 Pac. 946, 41 L. R. A. 544.

The principle announced in *Nichols* v. *Eaton,* as above quoted, was later approved in *Shelton* v. *King,* 229 U. S. 90, wherein it was held, among other things, that (quoting from the syllabus) : "While one may not by his own act preserve to himself the enjoyment of his own property in

such manner that it shall not be subject to claims of creditors or to his own power of alienation, a testator may bestow his own property in that manner upon one to whom he wishes to secure beneficial enjoyment without being subject to the claims of assignees or creditors. *Claflin* v. *Claflin,* 149 Massachusetts, 19, approved."

*Nichols* v. *Eaton, supra,* it is true, referred to the effect of express testamentary restrictions upon alienation of a life estate in real property, of the rents and profits therefrom and all interest and dividends of personal property. Upon principle the same rule is applicable to a contingent interest before it vests. Thus "a condition or conditional limitation upon alienation of a contingent interest before it vests is good." Gray's Restraints on Alienation of Property (2 Ed.) p. 33, par. 46. And upon principle the same rule is applicable to restrictions not expressed which are necessary to carry out the intention of a donor as expressed in the trust deed. Thus (quoting from the syllabus in *Harrison* v. *Davis,* 22 Haw. 465) : "The right of alienation is not a necessary incident to an equitable interest to income or support for the life of the beneficiary, and it does not exist where it would be destructive of the trust or is incompatible with its purposes though there be no express prohibition against alienation."

In the case at bar the settlors have granted to the trustee the absolute power of management and control over the property described in the trust deed including the power "to lease or rent the above described property and to receive the rents, issues and profits thereof, including crops of cane, as the same now or hereafter shall become due and payable, deducting therefrom all sums of money paid on account of taxes, insurance, water and sewer rates, interest, commissions, attorney's fees, whether the same be for advice or for the instituting or defending any and all suits or actions at law or in equity when such

may be deemed necessary to be obtained, brought and defended, and all such other sums and expenses incurred as may be necessary or proper for the preservation, protection and management of said property," with direction "to apply and to equally distribute and divide between and to give to the use of the said parties of the first part the overplus, if any, during the term of 20 years from the date hereof and after said term of 20 years to convey the said property to the said parties of the first part or to the survivors of them and to the heirs of each of all, if all or any of them should die before the expiration of the said term." From the foregoing excerpt from the trust deed it is apparent that the purpose of the settlors was to make such disposition of their property as would assure a more satisfactory management of the same than they could give it, to keep it intact for a period of twenty years, during which time the net income should be paid to them, with a provision for the vesting of the legal title in them, or the survivors of them, or in the event of the death of all, in the heirs of each, at the end of the trust period. I agree that the identity of the persons in whom legal title to the corpus shall vest is not determinable until the end of the trust period. To permit the ultimate contingent rights of a *cestui* to be taken away by a creditor would be clearly incompatible with the purposes of the trust and therefore contrary to the equitable principles above quoted.

Upon the second ground of dissent, the rule is thus stated in 2 Perry on Trusts (6 Ed.) p. 1335, Sec. 815a: "When the trust is not enforceable by the *cestui* his creditors cannot reach it. A remote, uncertain, contingent, beneficial interest cannot be reached," citing *Russell* v. *Milton,* 133 Mass. 181. Quoting from the last cited case on page 182: "In the case before us it is not in the power of the debtor to obtain anything under his father's will to apply to the plaintiff's debt. It would work a great and

unconscionable hardship upon him to order a sale of his estate. His interest, if vested, is uncertain and contingent; it has no market value, and any purchase of it would be a mere speculative venture. We do not think the statute contemplates that such an uncertain, contingent and speculative interest can be seized and sold by a creditor by proceedings in equity." In *Mears* v. *Lamona,* 49 Pac. (Wash.) 251, by a suit in the nature of a creditors' bill plaintiff sought to subject defendant's interest in his mother's estate to the payment of a judgment. The mother's will provided that defendant could take nothing thereunder until his sister became of age in August, 1899. Defendant was one of the executors of the estate and had no other property of his own. Held, that his interest in the estate should not be sold until the sister became of age, since the immediate sale would cause an inequitable sacrifice of the property. See also *Myer* v. *Thomson,* 35 Hun 561; *Seymour* v. *McAvoy, supra; Damhoff* v. *Shambaugh,* 206 N. W. (Iowa) 248; *Fleming* v. *Wood,* 111 N. W. (Mich.) 80; and *Mitchell* v. *Choctaw Bank,* 65 So. (Miss.) 278. In the case last above cited, where a testatrix had devised all of her property to her husband in trust for her children, giving him complete control thereof until all of the children should arrive at the age of twenty-one years, when it should be equally distributed among those living, and directing him in the meantime to support them out of the income, it was held that a child did not have such an interest as could be subjected by a creditor to the payment of his debt, nor could the court enter a decree directing payment out of the amount which would be due such child when the time arrived for distribution.

Beginning on page 803 of 60 A. L. R. is an exhaustive annotation of the subject of "Contingent remainder as subject to levy and sale by creditor." Section 3, p. 811, refers to creditors' suits. Quoting from the page last

cited: "A creditor has been held in several states not to be entitled to maintain a creditor's suit to reach a contingent remainder of his debtor and have it sold to pay a debt due to him. Kenwood Trust & Sav. Bank v. Palmer (1918) 285 Ill. 552, 121 N. E. 186; White v. McPheeters (1882) 75 Mo. 226; Watson v. Dodd (1873) 68 N. C. 528. * * * Watson v. Dodd (1873) 68 N. C. 528, was a suit for the purpose of satisfying a judgment by the sale of the defendant's interest under a will. The testator devised land to John Watson for life, and at his death to such of his children as might be then living, and the issue of such children as might have died leaving issue, with the provision that, if John Watson died without issue living at his death, the land should be equally divided between the defendant and three other persons. In holding that the plaintiff was not entitled to the sale of the defendant's contingent interest to satisfy a judgment against him, the court said: 'It is clear that such a possibility would sell for little or nothing, as no one would bid except the holder of the first estate, for the purpose of extinguishing the limitation. The party may, if he choose, enter into such an executory agreement to convey, provided the estate vests, but there is no principle upon which a court of equity can compel him to make an agreement.' * * * Whatever may have been the variations from it in other jurisdictions, it is the rule in this state that a contingent remainder is not an estate, but is merely the chance of having one. It cannot be the subject of sale. It cannot be levied upon by legal process, and cannot be conveyed voluntarily by deed, though a warranty deed may transfer the title, by way of estoppel, after the happening of the contingency, and it may be released to the reversioner. Hill v. Hill (1914) 264 Ill. 219, 106 N. E. 262; Haward v. Peavey (1889) 128 Ill. 430. * * * A court of equity

has no jurisdiction to order the sale of a mere contingent remainder."

The foregoing rule appears to be supported by an overwhelming weight of authority. For the reasons above set forth I believe the principle hereinabove referred to as number two, and applied in the above cited cases, should be adopted with reference to the respondent's contingent interest in the corpus of the estate described in the complainant's bill of complaint.

I agree with the majority that "as to the right to the income during the twenty-year period of the trust, no issue is presented."