NAPUA ZUPPLEIN *vs.* J. W. AUSTIN, Administrator, &c.

IN EQUITY.  BEFORE ALLEN, C.J.

OCTOBER, 1867.

The Court construes a will to intend that the testator's property shall be held in trust for the benefit of his widow and son during the widow's life, with remainder in fee to the son; holds that the devise to the son did not lapse by his death before his mother, and orders the trustee to pay half the income to the son's representatives during the widow's life, and after her death to transfer the whole estate to the son's heirs.

DECISION OF ALLEN, C.J.

This is a bill in Equity, in which the complainant alleges that Henry Zupplein executed a will in February, 1860, by which he gave all his estate to Robert W. Holt and Asher B. Bates, his executors, first for payment of his debts and funeral expenses, and secondly, the remainder to be held by them in trust for the use and benefit of his wife, Kekuahiwa, and his only son, William, during the natural life of said wife, accounting for the use and profit of the same, one half to his wife and the other half to his son, and upon the decease of his widow, to pay the expenses of her last sickness and her funeral, and then to transfer the remainder of his estate to his son William, his heirs and assigns, for his and their use and benefit forever; that upon the death of the testator shortly after, Mr. Bates, one of the executors, the other not accepting, procured probate of the will, and assumed and discharged the trusts therein imposed until he left this kingdom in March, 1864, when J. W. Austin, Esq., was duly appointed by the Court of Probate in his place, and remains administrator and trustee of said estate; that William, the only son of Henry Zupplein, died in January, 1866, having previously executed a will by which, after some small bequests, and after stating that his mother, Kekuahiwa, was

fully provided for by his father's will, he bequeathed the rest of his estate, whether in present possession or in expectancy, to his wife Napua, her heirs and assigns, and constituted J. W. Austin executor; that this will was admitted to probate and the said executor qualified; that Kekuahiwa, widow of Henry Zupplein, is still alive; that complainant is the widow of William, and is entitled as his heir to one-half the use and profit of the estate of Henry Zupplein, and upon the death of Kekuahiwa, to the remaining half. She states that she has applied to the executor of her husband's will for such one-half proceeds of Henry Zupplein's estate, but he refuses, and alleges that he is prevented by Kekuahiwa, who claims the entire estate. Whereupon the complainant prays the Court to cite the said Kekuahiwa and J. W. Austin to answer these allegations, and for a decree upon the trustee to pay her one-half the use and profit of Henry Zupplein's estate during the lifetime of·his widow, and upon her death to make over the whole of it to herself, her heirs and assigns.

The defendant, Kekuahiwa, admits in her answer the allegations in the bill in relation to the will of Henry Zupplein and the course of the trusteeship as set forth, and also the execution of William Zupplein's will, but denies that the plaintiff is entitled thereby to the half of the use and profits of Henry Zupplein's estate, and upon the death of his widow, to the whole estate; but claims that she herself is entitled by lapse to the immediate possession of the whole estate of her late husband as heir-at-law under our statute of descents, as if he had died intestate and without issue, and that the trust is now extinguished. She submits to the judgment of the Court whether any of the devised estate ever vested in William Zupplein, and whether complainant is entitled, as she sets up, to the present use and profit of one-half, and on defendant's death to be invested of the whole estate.

The answer of J. W. Austin agrees with that of his co-defendant. He admits the amount of property received by him in assuming the trusteeship of Henry Zupplein's estate, $18,042.82,

and some small parcels of real estate, as enumerated in the bill, and that he had declined to account to the complainant for one-half the use and profit thereof, inasmuch as his co-defendant claims adversely, and he has doubts as to the proper and legal construction of the will. He prays for the direction and order of the Court as to whether the estate of Henry Zupplein vested in William Zupplein upon the decease of his father, and whether the trust under the said will has become extinguished.

The first question which arises in this case is, what is the true construction of the will? The principles of construction are well defined. It is recognized by all the authorities that the intention of the testator as indicated in the will must prevail, unless it is in violation of some rule of law. A will is therefore to be construed so that all its parts, when considered in relation to each other, shall form a consistent whole.

It is very evident from the language of the will that the testator intended that the income of his entire property should be enjoyed in equal parts by his wife and son during her life, and it was a wise provision to place the property in the hands of trustees for this purpose, for it rendered it safer perhaps than any other mode. If, then, this is the purport of the will, it is very clear that the trust must continue at least during the life of Kekuahiwa; for were the Court to decree its termination, the security of the income of the property to the wife might be impaired and the intention of the testator defeated. This must guide the Court, unless it is in violation of some rule of law. It is contended by the counsel for the respondent that the widow is entitled, by reason of a lapse, as heir at law and under the statutes, to the whole estate remaining of her late husband, in the same manner as if he had died intestate without issue. There is no doubt of the general rule that all devises are lapsed if the devisee dies in the lifetime of the testator; but in the case at bar, the testator died before the devisee.

A lapsed devise is when the devisee dies after the making of the will, and before the testator.

The Court have examined the authorities of the counsel with

great care, and we find a material distinction between them and the case at bar. The counsel contend that the trustees took an estate determinable at the death of Kekuahiwa, or by the death of William before such event. The language of the will is, that after the payment of the debts and funeral expenses, the trustees are to hold the remainder of all the estate, real, personal, and mixed, "for the use and benefit of my wife Kekuahiwa and my only son William, during the natural life of my said wife, accounting for the use and profit of the same, one-half to my wife upon her request, and the other half to my son William, and upon the decease of my said wife, to pay the expenses of her last sickness and funeral; and then to transfer all of the remainder of my estate to my son William, his heirs and assigns, for his and their use and benefit forever."

No language can be more explicit. The death of the son prior to the mother was evidently not contemplated by the testator, so far as we can judge by the language of the will, and although it has taken place, it certainly cannot impair the duties and obligations of the trust so far as the widow is concerned. It is the express language of the will that she shall have one-half of the use and profits during her life, and that under the administration of trustees. The intention of the testator undoubtedly was to render the property more secure by placing it in the hands of gentlemen competent to manage it, and to exempt the widow from the care of the business.

The will provides, say the counsel further, that the trustees are to hold the remainder, after payment of debts and funeral expenses, for the use and benefit of mother and son during the natural life of the mother, paying each one-half profits, and after the mother's death to transfer the remainder. He does not say to whom, but the will does in these words: "to my son William, his heirs and assigns, for his and their use and benefit forever." The intention is very clear that the father devised the income of the property to the wife and son, so that they could enjoy it equally during her life, and then it should pass to him, his heirs and assigns. This is not only the language of the will, but it is exactly what you would expect the father to do.

It is further contended that the trust to Austin is extinguished. By the terms of the will it shall continue during the life of the widow; no other event than her death can terminate it. This provision is not in violation of law, and it is what the testator had a right to make and therefore it is not competent for the Court to annul it.

The counsel for the respondent contends further that no estate vested in William, or descended to complainant under his will.

Washburn, Vol. 2, 222 defines a remainder to be an estate or interest in lands or tenements, to take effect in possession or enjoyment immediately upon the determination of a prior estate, which is created at the same time and by the same act or instrument, and upon which such first-mentioned interest is made to depend. This definition is in conformity to Blackstone, Coke, Littleton, and Fearne. Where it is a remainder after a life estate, it is regarded as a vested remainder, and the possession only is postponed. 2 Jarman on Wills, 52. An estate devised to A for life, with a remainder to B in fee, who is a known person in *esse*, is known as a vested remainder. 2 Wash., 224.

A testator gave his wife the income and improvement of all his estate, real and personal, so long as she should live and remain his widow, and the remainder, after the decease or marriage of his widow, to be distributed in the same manner as if it had not been devised. The Court held that on the death of the testator his children took a vested remainder in fee. *Whitney vs. Whitney*, 14 Mass., 88. In the case of *Dixon vs. Pickett*, 10 Pick., 518, the Court sustains the doctrine that if the estate of A. is a vested remainder, it descends to his heirs, notwithstanding he died during the continuance of the life estate. By the terms of the will, Kekuahiwa has a life estate, upon which her son William has a remainder. It was created at the same time and by the same instrument, and thereby became vested.

In the case of *Wight vs. Shaw*, 5 Cush., 56, it appeared that the testator had devised land to his son during his natural life, but

if he should marry and have children, then at his death to his children, lawfully begotten, and his heirs forever. The son married and had six children, lawfully begotten. It was held by the Court that each of the children took, under the will, a vested remainder in one-sixth part of the land devised, and that the decease of the tenant for life was not the contingency on which the share of the children became vested estates; but the time designated when the precedent estate was to be determined, and the children to enter into the actual possession of the estate as their own in fee simple. This doctrine is supported by all the decisions in the same Court. *Nash vs. Cutler,* 16 Pick., 491; *Heard vs. Hall,* 16 Pick., 457.

In the case of *Shattuck vs. Stedman,* 2 Pick., 468, the testator had devised to his niece the interest of $1,000 during her life, and at her decease the principal sum to be divided among her children. A son of the niece survived the testator, but died before his mother, and it was held he took a vested legacy. 2 Powell on Devises, 241; *Winslow vs. Goodwin,* 7 Met., 363; *Digby vs. Digby,* 5 Mass., 535. In this case the son was to enjoy, immediately on the death of the testator, one-half of the income of the estate; and on a certain contingency, namely, the death of his mother, which in the course of natural laws was inevitable, the whole of the estate should pass to him and his heirs forever. There was no contingency as to the persons who were to take, but merely as to the happening of the event on which they were to take possession of both the real and personal estate as their own.

The postponement of the payment of a legacy does not prevent the legacy from vesting. The time applies to the payment, but not to the legacy itself. *Hixon vs. Oliver,* 13 Vesey, 108.

A bequest after the death of a particular person is held not to denote a condition that the legatee shall survive such person, but only to mark the time at which the legacy shall take effect in possession, that possession being merely deferred on account of the life interest given to the person on whose death the gift is to take full effect. *Malim vs. Keighley,* 2 Ves., 333.

In the case of *Blumue vs. Geldart*, 16 Ves., 313, the Master of the Rolls says that in the present case, if the testator had given the stock to his wife for life, and at her death to George Pringle, it would have been clear that he would have had a vested interest in the nature of a remainder. By the will the interest was given to one for her life, and to the other the capital at her decease. In effect and substance he took a remainder, which became vested immediately upon the testator's death, and was not defeated by his own death in the life-time of the wife.

It may be considered an established doctrine that when money is bequeathed to be invested in the purchase of an annuity, and the legatee dies before the person upon whose death the investment is to be made, it will be regarded as a vested legacy from the death of the testator. *Barnes vs. Rowley*, 3 Ves., 323, and note and the authorities cited. *Dawson vs. Killett*, 1 Brown, C. C., 107.

It is very evident from the authorities that the bequest to William Zupplein did not fail by his death in the life of his mother. It was not made, by the terms of the will, dependent on his surviving her.

The counsel for the respondent contends that Henry Zupplein, by his will, left his estate to trustees for the use and benefit of his wife Kekuahiwa, and if so, then the survivor would take the whole during life. Estates will be taken to be held in common, and not in joint tenancy, unless it shall be expressly said that the grantees, feoffees, or devisees, shall hold the same lands jointly, or as joint tenants, or to them and the survivor, or unless some words are used which show an intention that the same shall be held in joint tenancy. 16 Pick., 491.

It is very clear that it was the intention of the testator that all his estate, real and personal, should be transferred, after termination of the life estate and a discharge of the trust, to his son William, his heirs and assigns. He treated both species of property in the same way; it was to be held and enjoyed by the same person. Under our code the descent of real and personal property is to the same person. There is no distinction, and

the uniform rule gives symmetry to the whole doctrine of descent, and prevents many perplexing questions which arise under the English law on this subject.

By the will a trust was created and trustees appointed, one of whom accepted the trust and performed the duties till he made application to the Court to be discharged, when the Court appointed J. W. Austin trustee in his place, who received, he says in his answer, $18,042.82, and some parcels of real estate. He was duly clothed with the office of trustee, and the trust property became legally vested in him during the life of the widow Kekuahiwa.

I am of opinion that the trust is not yet complete, and will not be till the death of the widow and the payment of her funeral expenses. The income of a divided moiety of the estate may be different from one-half of the income of the whole estate. Be this as it may, the terms of the will are precise on this point. The estate was vested in the son on the death of the testator, subject to the widow's life interest in one-half the income of the whole property, both real and personal, but nothing passes to the executor of the son William, till the estate for life terminates, and the conditions of the trust are fulfilled, except one-half of the income.

The Court therefore decree that the respondent (Austin), in the discharge of the office of trustee under the will of Henry Zupplein, pay one-half of the income from the property, both real and personal, to the widow Kekuahiwa, and one-half to the executor of William Zupplein during the life of Kekuahiwa, and as the entire estate vested in the son on the death of the testator, subject to the life estate of the mother, at her death, agreeably to the terms of the will, he must pay and deliver the same to the executor of the last will and testament of William Zupplein, the son, to be applied according to the terms and conditions of said will.

Costs to be paid from the income of the estate.

*Messrs. Judd, Jones and Lawrence,* for complainant.

*Messrs. Stanley and Austin* for respondents.

October 5, 1867.