IN THE MATTER OF THE ESTATE OF ELIZA R. P. CHRISTIAN, DECEASED

NO. 7085

(PROBATE NO. 37025)

OCTOBER 28, 1982

RICHARDSON, C.J., LUM, NAKAMURA, JJ., AND RETIRED JUSTICES OGATA AND MENOR ASSIGNED TEMPORARILY

OPINION OF THE COURT BY RICHARDSON, C.J.

Petitioners-appellants are the second cousins and, thus, collateral heirs of the testatrix. They appeal from an order granting summary judgment in favor of appellee Anita Hamblin, the sole issue and heir of the testatrix. Appellants claim that the trial court erred in ruling that the testatrix's gift in her will lapsed so as to bypass the named beneficiary and allow the appellee to take through intestate succession. For the reasons set forth below, we disagree with the appellants and affirm the trial court's decision.

I.

Eliza Rose Pomaikai Holt Christian died in Gloucester, England on April 28, 1974, at the age of 90.[1] She left an estate, consisting primarily of stocks and bonds, then valued at $704,064.22. She also left an illegitimate and only child, Anita Rose Christian Hamblin, appellee herein. Anita was born in London in 1915, and her status as Eliza's natural daughter has been judicially established.[2]

---

[1] Like her death, Eliza's life has been the focus of some controversy. *See* Christian v. Waialua Agricultural Co., 31 Haw. 817 (1931) and 33 Haw. 34 (1934). The second of these *Christian* decisions was reversed by the Ninth Circuit, 93 F.2d 603 (1937), but on appeal was affirmed by the United States Supreme Court, 305 U.S. 91 (1938).

[2] Anita's status as Eliza's daughter was first established by a 1956 Hawaii court decree which awarded Anita financial assistance from Eliza's trust income, and secondly by the trial judge hearing this case, who granted summary judgment to Anita on this identity issue.

Upon her mother's death, Anita Hamblin nominated Herman Von Holt (no relation) and First Hawaiian Bank as co-administrators of Eliza's estate. They were so appointed on July 3, 1974. Two years later, on October 8, 1976, the co-administrators filed their final account and petitioned the court for distribution of the estate. The petition alleged that Eliza had died intestate and that Anita, as the sole issue and heir,[3] was entitled to her mother's entire estate.

On November 24, 1976, shortly before distribution was to occur, certain collateral heirs of Eliza filed a petition to determine heirship. These collateral heirs consisted of 21 of Eliza's second cousins.[4] The petition questioned the status of Anita Hamblin as Eliza's daughter and heir, and further alleged that Eliza did not die intestate since she had executed a will in 1930 which gave her entire estate to one Anne Holt Kentwell, whom the petitioners claimed under. On June 3, 1977, the collateral heirs filed a petition for the probate of said will.

In fact, Eliza had executed a one-page will in Oxford, England on October 3, 1930.[5] And, in fact, the will did state in pertinent part:

*I GIVE* all my estate of whatsoever kind and wheresoever situate to . . . Anne Holt Kentwell absolutely.[6]

Anne Holt Kentwell was Eliza's first cousin and her constant companion since childhood. Had she outlived Eliza, Anne stood to inherit all of Eliza's considerable estate. Anne died, however, on April 9, 1945, nearly 30 years before her would-be benefactor.

---

[3] Under HRS § 532-6, illegitimate children shall succeed to their natural mother's estate "in like manner as if [they] had been born in lawful wedlock."

[4] Two more second cousins of Eliza were subsequently named as petitioners, thus making a total of 23 collateral heirs. These persons were later designated as class representatives under Rule 23(b)(3), HRCP, for all of Eliza's possible heirs other than her lineal descendants.

[5] Certain of the appellee's trial court pleadings challenged the validity of this will on various grounds — *e.g.,* mental incapacity, fraud, and undue influence. For purposes of the appellee's summary judgment motion on the issue of lapse, however, the trial court — with the concurrence of both parties — proceeded on the premise the will was validly executed and never revoked. We proceed on this same premise for purposes of this appeal.

[6] Eliza's will also appointed Anne Holt Kentwell and Alice Holt Kentwell (Anne's daughter) co-executrixes of the will. It was signed "E.R.P. Christian" and witnessed by two medical doctors.

The trial court denied appellee Anita Hamblin's first motion for summary judgment, ruling that there existed a question of fact as to whether Eliza intended that her gift to Anne Kentwell should lapse in the event Anne predeceased her. Following extensive discovery by both parties and several pretrial conferences, Anita Hamblin moved the court to reconsider its ruling on the lapse issue. This time the trial court found in favor of the appellee, ruling that the 1977 anti-lapse provision of the Uniform Probate Code did not apply retroactively so as to save Eliza's gift to Anne Kentwell, and that there was no evidence indicating who the testatrix intended to substitute for Anne should Anne predecease her. Final judgment ordering the distribution of Eliza's entire estate to Anita Hamblin was entered on June 2, 1978. Such distribution was stayed pending this appeal upon the appellants' posting a supersedeas bond.

## II.

### A.

It is well-settled that a will speaks from the time of the testator's death, and that what is spoken is subject to the laws in force at that time. *Employees' Retirement System v. Chang,* 42 Haw. 532, 536-37 (1958); *Campbell v. Kawananakoa,* 34 Haw. 333, 343-45 (1937); *Paulo v. Malo,* 4 Haw. 536, 537-38 (1883). At the time of testatrix Eliza Christian's death in 1974, Hawaii had no anti-lapse statute.[7] The rule followed by most jurisdictions, Hawaii included, was that a gift in a will lapsed if the named recipient predeceased the testator. *See Estate of Walker,* 43 Haw. 304, 309 (1959), *aff'd sub nom, Tracy v. Baker,* 282 F.2d 431 (9th Cir. 1960); *Zupplein v. Austin,* 6 Haw. 8, 10 (1867).

In 1976, however, the Hawaii legislature adopted the Uniform Probate Code, which became Chapter 560 of the Hawaii Revised Statutes. Among the Code's provisions was an anti-lapse statute, section 2-605, which allows the issue of a named beneficiary to take

---

[7] It is Hawaii law which governs the disposition of Eliza Christian's estate because (1) Eliza always remained a Hawaii citizen; and (2) nearly all her estate was situated in Hawaii and administered by a Hawaii guardian.

where that beneficiary predeceases the testator.[8] This anti-lapse statute, along with most of the other Code provisions, went into effect on July 1, 1977. *See* HRS § 560:8-101(a).

Appellants contend that section 2-605 of Hawaii's Uniform Probate Code applies retroactively to this instant fact situation so as to avoid the lapse of the testatrix's gift to Anne Kentwell. It is true that such statute would, if given retroactive effect, pass the gift on to Anne's issue and thus to the appellants herein.[9] We hold, however, that there is nothing in the language or legislative history of section 2-605, or in any other provision of the Uniform Probate Code, to indicate that the legislature intended for the anti-lapse statute to apply retroactively.

### B.

The common law rule disfavoring the retroactive application of laws is codified in HRS § 1-3, which states: "No law has any retrospective operation, unless otherwise expressed or obviously intended." *See Graham Construction Supply, Inc. v. Schrader Construction, Inc.*, 63 Haw. 540, 546, 632 P.2d 649, 653 (1981); *Molokai Homesteaders Cooperative Association v. Cobb*, 63 Haw. 453, 469, 629 P.2d 1134, 1137 (1981); *Roe v. Doe*, 59 Haw. 259, 264, 581 P.2d 310, 314 (1978). There is nothing "expressed" in HRS § 560:2-605 as to its possible retroactive effect.

In § 560:8-101, however, there are several subsections which deal with the scope of Chapter 560's applicability. Although both the appellants and appellee cite several different subsections in support

---

[8] HRS § 560:2-605 is entitled "Anti-lapse; deceased devisee; class gifts," and reads in part:

> If a devisee who is a grandparent or a lineal descendant of the grandparent of the testator is dead at the time of execution of the will, or fails to survive the testator, or is treated as if he predeceased the testator, the issue of the deceased devisee who survive the testator take in place of the deceased devisee. . . .

"Issue" is defined in § 560:1-201(25) as "all . . . lineal descendants of all generations."

[9] Although only Anne's six children (and their issue) would be entitled to take in place of Anne under § 560:2-605, these individuals executed a family heirship agreement with certain other second cousins of Eliza Christian to share in the recovery, if any, from these proceedings.

of their respective positions,[10] we find it necessary to cite but one to resolve this issue. That provision is § 560:8-101(b)(6), which was specifically added by the Hawaii legislature to the original Uniform Probate Code, and which states: "Notwithstanding any of the above, this chapter shall not affect any property or other rights accrued under the case and statutory law of this State . . . which became vested prior to July 1, 1977."

The question becomes, then, whether appellee Anita Hamblin had any rights which became vested prior to July 1, 1977. The answer: under both the common and case law, the heirs of a decedent acquire a vested interest in the estate upon the decedent's death. See 6 W. Bowe & D. Parker, Page on Wills § 59.2, at 384 (3d ed. 1962); Estate of Parsons, 272 N.W.2d 16, 18-19 (Iowa 1978); Welder v. Hitchcock, 617 S.W.2d 294, 297 (Tex. Civ. App. 1981). Although the general rule with regard to personal property is that the heirs do not acquire a vested legal interest until the administrator has so assented, the heirs do acquire a vested equitable interest in such property upon the decedent's death. See 6 W. Bowe & D. Parker, supra § 59.2, at 384. This equitable interest we find is sufficient for purposes of satisfying the "vested rights" language of § 560:8-101(b)(6).

At the time of Eliza Christian's death in 1974, Hawaii abided by the rule that the rights of beneficiaries and heirs vest immediately upon the death of the decedent.[11] See Employees' Retirement System v.

---

[10] One of the subsections cited by the appellants is § 560:8-101(b)(5), which reads: "Any rule of construction or presumption provided in this chapter applies to instruments executed and multiple-party accounts opened before July 1, 1976 unless there is a clear indication of a contrary intent." Given that the anti-lapse statute is listed as a "rule of construction" in the Uniform Probate Code, and assuming without deciding that a will is an "instrument" as that word is used in 8-101(b)(5), it appears that this subsection permits the retroactive application of the anti-lapse statute to the instant fact situation. We hold, however, that § 560:8-101(b)(5) is not applicable when, as here, a vested right is subject to impairment. For to permit such impairment would directly violate the mandate of § 560:8-101(b)(6), and we must construe the statute so as to give effect to all its parts. In re Ainoa, 60 Haw. 487, 490, 591 P.2d 607, 609 (1979); In re Castro, 44 Haw. 455, 458, 355 P.2d 46, 48-49 (1960); In re Pringle, 22 Haw. 557, 564 (1915).

[11] This rule would later be codified in section 3-101 of Hawaii's Uniform Probate Code, which states: "Upon the death of a person, his real and personal property vests in the persons to whom it is devised by his last will or in those indicated as substitutes for them in cases involving lapse, . . . or in the absence of testamentary disposition, in

*Chang, supra,* 42 Haw. at 536-40; *Campbell v. Kawananakoa, supra,* 34 Haw. at 344-47; *Paulo v. Malo, supra,* 4 Haw. at 537-38.[12] Consequently, upon Eliza's death, her gift to Anne Kentwell — a gift which had lapsed with Anne's predeceasing the testatrix — became vested in her sole intestate heir, appellee Anita Hamblin. According to the express language of HRS § 560:8-101(b)(6), then, the anti-lapse provision cannot be given retroactive effect in this case, since to do so would seriously "affect" the appellee's vested interest in the testatrix's estate.

Given the clear, explicit language of HRS § 560:8-101(b)(6), it would be difficult if not unreasonable to conclude that the legislature could have "obviously intended" for the anti-lapse provision to have any retroactive application. Additionally, we find nothing in the legislative history to indicate that such provision should be applied retroactively.

We are aware, of course, that the primary purpose of anti-lapse statutes is to effect "the probable intention of the average testator," it being thought that the average testator would prefer having the issue of the named beneficiary take rather than allow the gift to lapse into the residue. T. Atkinson, Law of Wills § 140, at 779 (2d ed. 1953). *Accord,* 6 W. Bowe & D. Parker, *supra* § 50.10, at 77. We

---

his heirs. . . ."

We need not decide whether this provision may be applied retroactively to this instant fact situation, for we find that, unlike section 2-605, the anti-lapse provision, section 3-101 represents the common and case law as followed in Hawaii prior to the enactment of the Uniform Probate Code.

[12] Appellants contend that the vested rights analysis followed in these cases is outmoded, and that courts and commentators now use the "balancing of interests" test in determining whether a statute may be applied retroactively. Under this "modern" test, courts are to balance three factors: "the nature and strength of the public interest served by the statute, the extent to which the statute modifies or abrogates the asserted pre-enactment right, and the nature of the right which the statute alters." Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation,* 73 Harv. L. Rev. 692, 697 (1960).

We do not pass on the merits of this modern test, nor do we balance the factors listed in the test, since we believe the legislature already implicitly did so by adding § 560:8-101(b)(6) to the original Uniform Probate Code. It should be stressed that this subsection only prohibits the retroactive application of those Chapter 560 provisions which might impair an individual's vested rights. It does not — nor do we — say that "vested rights" can *never* be constitutionally impaired through the retroactive application of a statute.

believe such reasoning sound and such purpose well-intentioned. We are also cognizant of the fact that subsection 1-102(a) of Chapter 560 provides that "[t]his chapter shall be liberally construed and applied to promote its underlying purposes and policies," one of which is "[t]o discover and make effective the intent of a decedent in distribution of his property," HRS § 560:1-102(b)(2).

We decline, however, to apply the anti-lapse provision to a situation where both the execution of the will and the death of the testatrix occurred prior to the provision's effective date. To do so would be to find legislative intent where none exists; more critically, it would be to blatantly ignore the express language of subsection 8-101(b)(6) of Hawaii's Uniform Probate Code.

### III.

Having concluded that the anti-lapse provision does not apply retroactively to the instant case, we address the next issue raised by the appellants: whether a testatrix's intent that a gift shall not lapse is sufficient to save that gift notwithstanding the absence of a named substitute beneficiary. Appellee concedes for the sake of this appeal that testatrix Eliza Christian intended that her gift to Anne Kentwell would not lapse; appellee argues, however, that Eliza's failure to name a substitute donee caused such gift to lapse in any event. Appellants, on the other hand, concede that there is no evidence indicating who would take in place of Anne should Anne predecease Eliza; they contend, however, that such substitutionary intent is unnecessary in light of Eliza's intent that her gift to Anne would not lapse. We believe it is the appellants' concession which is fatal to their claim.

Among the numerous legal principles which dot the landscape of the law of wills, none is as venerable as the principle that courts shall strive to effectuate the testator's intent. *Hawaiian Trust Company, Ltd. v. Wilder*, 46 Haw. 436, 441-42, 382 P.2d 61, 64 (1963); *Estate of Campbell*, 33 Haw. 799, 801-02 (1936); *Mercer v. Kirkpatrick*, 22 Haw. 644, 647 (1915). This intent is to be ascertained by the words used by the testator in his will. *See* cases cited *supra*. Another well-established principle is that courts will not "rewrite the will of the testator nor vary its provisions." *Hawaiian Trust Company, Ltd. v. Wilder, supra*, 46 Haw. at 444, 382 P.2d at 65.

Applying the foregoing principles of law to the instant case, the flaw in the appellants' argument becomes apparent. For even if we were to assume that the testatrix intended that her gift to Anne Kentwell would not lapse, there is no hint — at least, not in the will — as to who would take in Anne's stead should she be unable to. It is clear that however one construes the phrase, "to ... Anne Holt Kentwell absolutely,"[13] there is simply no way to determine from that phrase who should be substituted for Anne. The comments of one learned commentator on the law of wills are instructive:

> A gift is said to be substitutional when provision is made in the will for someone to take the gift in the event of the death of the original beneficiary before the death of the testator. ... Where a will is specially prepared so as to avoid a lapse, care must be taken to show exactly how the gift is to go in the event of the beneficiary dying in the lifetime of the testator. It should declare in express terms what person or persons are to be substituted.

G. Thompson, The Law of Wills § 497, at 720 (3d ed. 1947).

A comparison of this case to *Estate of Walker,* 43 Haw. 304 (1959), is illuminative. In that case, the testator had willed a gift to "Henry Edwin Walker, his heirs and assigns forever." *Id.* at 306. Despite this far more explicit language than used by the testatrix in the instant case, the *Walker* court held that the gift to Henry lapsed upon his predeceasing the testator. The court concluded: "There is no indication in Frederick's will that he used those words as words of substitution. In the absence of such indication, extrinsic evidence may not be admitted to vary the legal effect of the words used." *Id.* at 308. *Accord: In re Newby's Estate,* 146 Colo. 296, 361 P.2d 622 (1961); *Hewes v. Mead,* 81 Ohio App. 489, 80 N.E.2d 212 (1947).

We are obligated to carry the intent of testatrix Eliza Christian as far as it goes — that she wished for Anne Holt Kentwell to inherit her entire estate. We are precluded, however, from going any further and deciding who should take in Anne's place, for that would indeed

---

[13] It bears noting that, in similar situations, courts have construed the word "absolutely" to be one of description — *i.e.,* rather than creating an estate, the use of "absolutely" merely characterizes the quality of the estate given. *See, e.g.,* Gamester v. Massey, 129 Ind. App. 522, 158 N.E.2d 805 (1959); Schmidt v. Claus, 250 Iowa 314, 93 N.W.2d 592 (1958); Pritchett v. Corder, 105 S.W. 910 (Ky. 1907); Rogers v. Rogers, 221 S.C. 360, 70 S.E.2d 637 (1952).

be to write Eliza's will for her. We are mindful of our admonition in *Mercer v. Kirkpatrick, supra,* that "in no case should the court supply an omission in a will upon a mere conjecture. It is the intention which the testator has expressed in his will that controls and not that which he may have had in his mind." 22 Haw. at 648-49.

## IV.

We thus conclude, as a matter of law, that the complete absence of evidence of substitutionary intent on the part of Eliza Christian caused her gift to Anne Kentwell to lapse upon Anne's death. It should be pointed out that with the passage of the Uniform Probate Code and its anti-lapse provision, evidence of such substitutionary intent is no longer necessary to avoid lapse. As we have already held, however, this provision came too late to save Eliza's gift to Anne. Since there was no residuary clause in the will, Eliza's entire estate passed as intestate property to her sole issue and heir, appellee Anita Hamblin. The judgment of the trial court is hereby affirmed.

*Robert A. Smith* for petitioners-appellants.

*Clinton R. Ashford (Carol Y. Asai* with him on the brief; *Ashford & Wriston* of counsel) for appellee Anita Rose Hamblin.