96 P.3d 1098

**In the Matter of the Joseph Pimental MEDEIROS TESTAMENTARY TRUST AND LIFE INSURANCE TRUST, Deceased.**

No. 24602.

Supreme Court of Hawai'i.

Sept. 3, 2004.

Stephen D. Tom, and Marie E. Riley (of White & Tom), Honolulu, on the briefs, for appellant Donna Gayle Bender.

Mark B. Desmarais, Raymond K. Okada, and Judy Y. Lee (of Goodsill Anderson Quinn & Stifel), Honolulu, on the briefs, for beneficiary-appellee Joseph Medeiros.

David C. Larsen and Rhonda L. Griswold (of Cades Schutte Fleming & Wright), Honolulu, counsel of record, for petitioner-appellee Pacific Century Trust.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by MOON, C.J.

Appellant Donna Gayle Bender appeals from the first circuit court's [1] (1) September 12, 2001 order granting petition for instructions and (2) October 1, 2001 final judgment closing trust proceedings. The circuit court determined in its September 12, 2001 order that Bender is not a beneficiary under the Joseph Pimental Medeiros Testamentary Trust [hereinafter, the testamentary trust] and the Joseph Pimental Medeiros Life Insurance Trust [hereinafter, the life insurance trust, and, together with the testamentary trust, the trusts], which Bender's natural grandfather, Joseph Pimental Medeiros (Medeiros), established in 1942 via will and indenture, respectively. On appeal, Bender essentially contends that the circuit court erred by: (1) applying the law in effect when the trusts were executed in 1942 to conclude that her adoption during minority by her stepfather precludes her from being the "issue" of her natural father, Lawrence Medeiros (Lawrence), for purposes of claiming as a beneficiary under the trusts; and (2) failing to give effect to Hawai'i Revised Statutes (HRS) § 560:2–114 (Supp.1997),[2] Hawaii's "ohana adoption" statute, pursuant to which she is considered the "issue" of her natural father (Lawrence) for purposes of construing the trusts. For reasons more fully discussed *infra*, Section III, we believe Bender's claims lack merit. Accordingly, we affirm the September 12, 2001 order granting petition for instructions and the October 1, 2001 final judgment closing the trust proceedings.

## I. BACKGROUND

On February 2, 1942, Medeiros executed (1) a last will and testament, which provided, *inter alia*, for the creation of the testamentary trust, and (2) an indenture establishing the life insurance trust. At the time, Medeiros was married to Helen Guerreiro Medeiros, with whom he had four children, Lawrence, Mary Ann Cozey Medeiros, Abel P. Medeiros, and Alice Medeiros Ehing.

The testamentary trust provided in pertinent part that:

> (b) If my wife, *HELEN GUERREIRO MEDEIROS*, shall survive me, my said Executors and, from and after distribution of my residuary estate to my Trustees, then my Trustees shall from the date of

---

1. The Honorable Colleen K. Hirai presided over the underlying proceedings.

2. HRS § 560:2–114 states in pertinent part that:
 **Parent and child relationship.** (a) Except as provided in subsections (b) and (c), for purposes of intestate succession by, through, or from a person, an individual is the child of the child's natural parents, regardless of their marital status. The parent and child relationship may be established under chapter 584.
 (b) An adopted individual is the child of the child's adopting parent or parents and not of the child's natural parents, except that:
 (1) Adoption of a child by the spouse or reciprocal beneficiary of either natural parent has no effect on:
 (A) The relationship between the child and that natural parent; or
 (B) The right of the child or a descendant of the child to inherit from or through the other natural parent; and

 (2) *Adoption of a child during such child's minority by the spouse* or reciprocal beneficiary *of a natural parent of the child,* by a natural grandparent, aunt, uncle, or sibling of the child or the spouse or reciprocal beneficiary of a natural grandparent, aunt, uncle, or sibling of the child *has no effect on the relationship between the child and either natural parent, for the limited purpose of interpretation or construction of a disposition in any will, trust, or other lifetime instrument, whether executed before or after the order of adoption,* and for the purposes of determining the heirs at law of a natural family member of the child.
 ....
 (Emphases added.)

my death pay to her, so long as she shall live, all the net income derived from said estate or trust estate, as the case may be, until the first January 1st after my death, and thereafter monthly all the net income derived from said estate or trust estate, as the case may be, up to a total amount of Six Thousand Dollars ($6,000.00) per calendar year, and shall pay the surplus net income, if any, in equal shares to those who shall be surviving from time to time of my said wife and *MARY ANN COZEY MEDEIROS, LAWRENCE P. MEDEIROS, ABEL P. MEDEIROS* and *ALICE MEDEIROS EHING*, my children, and of the issue of any of my children who shall be then dead, such issue taking per stirpes by right of representation in each generation[ ]. . . .

(c) *From and after the death of my wife,* or if she be not married to me at the time of my death, or if she shall predecease me, *my Trustees shall pay the net income from my trust estate, in equal shares, to those who shall be surviving from time to time of my said children and of the **issue** of my said children, such **issue** taking per stirpes by right of representation in each generation,* until the termination of this trust[ ]. . . .

(Emphases added.)

Similarly, the life insurance trust directed in relevant part that:

1. *The Trustees shall pay the net income from the foregoing trust estate in the manner following,* to-wit:

Unto the said HELEN GUERREIRO MEDEIROS and to those of MARY ANN COZEY MEDEIROS, LAWRENCE P. MEDEIROS, ABEL P. MEDEIROS and ALICE MEDEIROS EHING, children of the Trustor and his said wife, who shall be living on each quarterly remittance date, respectively, in equal shares; provided, however, that *if any of said children of the Trustor shall die either before or after him leaving **issue** him or her surviving, such **issue** shall take by right of representation, per stirpes, the share of the net income which such deceased child would have re-*

*ceived hereunder had he or she continued to live*[ ]. . . .

(Emphases added.)

Medeiros died sometime before June 29, 1946, the date his will was presented for probate. On July 7, 1949, Bender was born to Edna Falces (Edna) and Lawrence, who were not married to each other. On January 23, 1952, Edna married Glen A. Bender (Glen). Glen legally adopted Bender on February 26, 1952, when Bender was nearly three years old.

Lawrence died on July 13, 2000, survived by two children, beneficiary-appellee Ronald Medeiros (Ronald) and Bender. In a February 5, 2001 letter from Bender to Pacific Century Trust (PCT), the trustee of the trusts, Bender claimed to be the issue of Lawrence and that she was, therefore, "entitled to his [ (Lawrence's) ] benefits [under the trust] upon his death." Relying upon HRS § 560:2–114, Bender asserted that her "adopt[ion] by the husband of her natural mother[ ] . . . has no effect upon her ability to inherit from or through her natural father, Lawrence P. Medeiros."

In a February 20, 2001 letter to Bender, PCT responded in relevant part:

In your analysis, you rely upon Section 560:2–114 of Hawaii's present Uniform Probate Code, which went into effect on January 1, 1997. While we agree that, under Hawaii's current law, the adoption by a stepparent does not affect the rights of the child to inherit from the child's biological parents, we believe that the analysis must focus upon the law in effect in 1942 when Joseph Medeiros executed the irrevocable life insurance trust and in 1946 when he died. *In re Estate of Campbell,* 33 Haw. 799 (1936) (court reviewed law in effect at time will was executed to determine testator's intent); W. Fratcher, *Scott on Trusts* § 164.1 (4th ed. 1987).

The statute in effect in 1942 clearly provided that "[a]n adopted child . . . shall inherit estate undisposed of by will from its adopting parents the same as if it were the natural child of such adopting parents, *and shall not inherit estate from its natural parents* . . ." Act 83 (1905) (emphasis added). There was no statutory exception

for an adoption by a stepparent at that time. Hawaii case law also made it clear that an adopted child could inherit through an adoptive parent's ancestors. [*In re Estate of Kamauoha*], 26 Haw. 439 (1922). However, our research did not yield any case in Hawaii or elsewhere during this time frame that addressed the issue of adoption by a stepparent in the context of inheritance rights. Therefore, the only indication of the law in effect in 1942 is the statute, which clearly states that an adopted child shall not inherit from his or her natural parents.

. . . .

(Some brackets, ellipses points, and emphasis in original.) In short, PCT took the position that HRS § 560:2–114 did not apply to the trusts. PCT indicated, however, that it would petition the circuit court for instructions on the issue should Bender disagree with its analysis.

In a March 9, 2001 letter, Bender advised PCT that she disagreed with its analysis, requesting that it petition the circuit court for instructions. On March 31, 2001, PCT filed its petition for instructions with the circuit court, requesting instructions, *inter alia*, "as to whether Donna Bender is a beneficiary under the [t]rusts . . . [.]" The petition was served by PCT on Bender and Ronald.

On May 14, 2001, PCT filed a supplemental memorandum "in order to identify other parties with an interest in the issues raised in the Petition for Instructions" and "to provide them with notice." Stating that the petition for instructions "affects the interests of [Medeiros]'s other grandchildren," PCT identified as additional interested persons beneficiaries-appellees Virginia T. McGargill (Virginia), Faith Christiansen (Faith), Joseph P. Medeiros (Joseph), Helen Schmall (Helen), John Medeiros (John), and Marilyn Alicia Ehing (Marilyn) as Medeiros's other grandchildren (in addition to Ronald).

On July 2, 2001, Virginia, Faith, Joseph, Helen, and John filed a *pro se* response to the petition for instructions, stating that they agreed with PCT's position. On July 20, 2001, PCT filed a supplemental memorandum

in support of its petition for instructions, attaching letters from Ronald, Marilyn, and John, individually, each of whom expressed agreement with PCT's position.

Following an August 3, 2001 hearing on the matter, the circuit court granted PCT's petition and ruled that Bender is not a beneficiary under the trusts. In its September 12, 2001 order granting PCT's petition for instructions, the circuit court stated in pertinent part:

The Court, having considered the Petition, Reply Memorandums, Responses, Supplemental Memorandums, Amendments, and the record and files herein, and having found that all interested persons were properly served and had notice of the Petition, hereby determines that:

1. The law in effect in 1942 when the [trusts] were signed should be applied to determine whether Donna Gayle Bender is a beneficiary under the Joseph Pimental Medeiros Testamentary Trust . . . and the Joseph Pimental Medeiros Life Insurance Trust. . . .

2. The law in effect in 1942 provided that an adopted child shall not inherit from his or her natural parents. The same law that was in effect when Joseph Medeiros signed his Will was also in effect at his death.

3. Under the applicable law, Donna Bender's adoption by her stepfather precludes her from being considered Lawrence Medeiros' "issue" for purposes of inheriting from her natural grandfather's trust estate.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

A. The Petition is hereby granted.

B. Donna Bender is not a beneficiary under the Joseph Pimental Medeiros Testamentary Trust . . . and the Joseph Pimental Medeiros Life Insurance Trust. . . .

The circuit court subsequently entered its October 1, 2001 final judgment closing the trust proceedings.

This timely appeal followed.[3]

---

**3.** On February 19, 2002, PCT filed a statement of no position with respect to the instant appeal,

citing its "duty to deal impartially with the trust beneficiaries." Specifically, PCT stated that,

## II. *STANDARD OF REVIEW*

 The construction of a trust is a question of law which this court reviews de novo. *See Trust Created Under the Will of Damon,* 76 Hawai'i 120, 123–24, 869 P.2d 1339, 1342–43 (1994) (citing *In re Trust Estate of Holt,* 75 Haw. 224, 232, 857 P.2d 1355, 1359, *reconsideration denied,* 75 Haw. 580, 863 P.2d 989 (1993)). When construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills. *Id.* at 124, 869 P.2d at 1343. "A fundamental rule when construing trusts is that the intention of the settlor as expressed in a trust instrument shall prevail unless inconsistent with some positive rule of law." *Id.* (internal brackets and quotation marks omitted) (citing *In re Trust of Lopez,* 64 Haw. 44, 49, 636 P.2d 731, 735 (1981)).

## III. *DISCUSSION*

### A. *Applicable Law*

As previously indicated, Bender asserts that the circuit court erred by applying the law in effect when the trusts were executed in 1942 to conclude that her adoption during minority by her stepfather precludes her from being the "issue" of her natural father, Lawrence, for purposes of claiming as a beneficiary under the trusts. Bender reasons that:

> It is the general rule that the law governing the descent of property is the law in force at the time of death of the ancestor. [*In re Trust Estate of Holt* ], 42 [Haw.] 129, 133 (1957). However, the general rule does not apply in Hawaii to beneficiaries of a delayed gift in trust to a class of persons, in particular to a class of persons defined by law. [*Holt* ], 42 [Haw.] at 138–[ ]39. The appellate courts in this jurisdiction have long held that where a gift in trust to a class is postponed until the termination of a preceding estate, the takers are ascertained as of the date of such termination. [*In re Trust Estate of Kanoa* ], 47 [Haw.]

610, 618 [393 P.2d 753] (1964) (the court finding that the class "heirs of the body" of the named initial income takers will be ascertained at the termination of the trust). (*See also, Crescent City Motors, Ltd. v. Nalaielua,* 31 [Haw.] 418 (1930).) When a testator makes a delayed gift to a class defined by law, that class will be defined by the terms of the law in effect at the time the preceding estate terminates, since, in this jurisdiction, a testator who commits the future distribution of his estate to a class defined by law is presumed to have contemplated the possibility of a change in the law in the meantime. [*Holt* ], 42 [Haw.] at 138–[ ]39.

Bender's reliance upon *Holt* is misplaced. In the instant case, this court is faced with determining whether Bender is the "issue" of her natural father, Lawrence, for purposes of claiming as a beneficiary under the trusts. The *Holt* court, however, was presented with a different question—whether the adopted child therein was. an "heir" through her adopted father for purposes of claiming as a beneficiary under the testamentary trust in that case.

The trust in *Holt* was created by the 1914 will of George H. Holt, who died in 1929, survived by his wife and eleven children. 42 Haw. at 130. Pursuant to the terms of Holt's testamentary trust, the trustees were directed to pay the income from the trust to Holt's wife during her lifetime, and thereafter, "to pay income to all of my *heirs* in equal shares per stirpes, and upon the final ending of the term of said trust, as aforesaid, to divide my trust estate among the persons entitled to the same at that time under the law per stirpes." *Id.* (some emphasis omitted). Accordingly, following the death of Holt's wife in 1934, the income from the trust estate was divided into eleven equal shares and distributed to the Holt children. *Id.* at 130–31. Over the next fifteen years, five of the Holt children died; three died leaving natural children surviving them, one daughter died childless, and one son, Christopher, died leaving a wife and an adopted daughter, Al-

---

"[b]ecause the issue of whether or not [Bender] is a trust beneficiary has not been finally resolved, [it] does not take any position on the issues presented on appeal." We note that, on

April 17, 2002, Joseph filed an answering brief in which Virginia, Faith, Helen, John, Marilyn, and Ronald joined.

berta. *Id.* at 130. Following the death of the childless daughter, the trust income was divided into ten equal parts and distributed to the surviving Holt children and to Holt's grandchildren whose parent in the Holt line of descent had died. *Id.* at 131. However, after Christopher's death, the estate's trustee requested instructions from the circuit court as to the disposition of Christopher's one-tenth share in the trust income. *Id.*

This court observed in *Holt* that:

The will provides that after the death of the widow the income of the trust be paid to testator's *heirs* in equal shares per stirpes.

When a gift is made in a will to *heirs* of a designated person, the word *"heirs"* means *persons who succeed to the property of such designated person under the law which governs intestate succession.* (*Thurston v. Allen,* 8 Haw. 392; *Carter v. Carter,* 10 Haw. 685 [687]; *von Holt v. Dreier,* 34 Haw. 131[.])

Heirs of a designated person are ordinarily determined as of the date of death of such person, unless the testator shows a contrary intent. This court *has held that where a gift to heirs is postponed until the termination of a preceding estate a contrary intent is shown and that the heirs will be determined as of the date of the termination of the preceding estate.* (*Auld v. Andrade,* 31 Haw. 1; *Crescent City Motors v. Nalaielua,* 31 Haw. 418[.])

In this case the testator gave the income of the trust to his widow for life and thereafter to his heirs. So, the heirs were, initially, determinable as of the date of death of the widow. Testator's heirs on such date were his eleven surviving children.

*Id.* at 132–33 (emphases added).

Because Holt provided for the payment of trust income to his heirs, the *Holt* court initially addressed the question whether Holt intended that the word "heirs" be limited in its application to persons who were initially determined to be his heirs upon the death of

the widow, or whether he intended that the word include persons who were his heirs from time to time as the income accrued. *Id.* at 133. Agreeing with the latter construction, the *Holt* court reasoned that, where a gift of income of a trust is made to heirs of a designated person per stirpes, and the corpus at the termination of the trust is also given to heirs of such designated person per stirpes, such gift of income is construed as a gift to persons who are from time to time heirs of such designated person when the income accrues. *Id.* at 135.

The *Holt* court next addressed whether Alberta was precluded from being Holt's heir per stirpes through Christopher inasmuch as she was not Christopher's natural child. Stated differently, the question presented was "whether an adopted child can inherit not only from his adoptive parent but also through his adoptive parent and thereby be in a line of descent from the ancestor of his adoptive parent." *Id.* at 136. At the time Holt made his will in 1914, an adopted child could inherit only from, and not through, his adoptive parent. *Id.* However, at the time Alberta was adopted by Christopher and also at the time Holt died, the legislature had enacted a law[4] that this court "construed [in *In re Estate of Kamauoha,* 26 Haw. 439 (1922),] to extend to an adopted child the right to inherit through the adopting parent." *Id.*

In determining the applicability of *Kamauoha,* the *Holt* court stated:

When the testator used the words "my heirs," did he mean his heirs as determined by the law in force at the time of the execution of his will or his heirs as determined by the law in force at some later date, either the date of his death or the date of death of Christopher? If the testator meant the former, *Estate of Kamauoha* has no application because the law at the time of the execution of the will was that an adopted child could not inherit through its adopting parent. If the testator meant the latter, *Estate of Kamauoha*

4. In 1915, the legislature enacted a law to regulate the adoption of minors pursuant to which the judge granting an adoption was required to make an order declaring that from the date of adoption "to all legal intents and purposes" the adopted child is the child of the adopting parent. 1915 Laws of the Territory of Hawai'i Act 47, § 2 at 50.

has a controlling effect in this case, for it then makes Alberta, in legal contemplation, his descendant and heir through Christopher.

We are of the opinion that the law to be applied in this case is the law that was in force when Christopher died.

*Id.* at 137–38.

It was only in the context of construing the word "heirs" that the *Holt* court stated:

The testator made a gift to his heirs, without giving any indication regarding the sense in which he used that word. Where no light is thrown by the testator, the following remark of Mr. Justice Cardozo in *New York Life Insurance & Trust Co. v. Winthrop*, 237 N.Y. 93[,] 109, 142 N.E. 431[,] 434, aptly describes the situation: "In all likelihood, he simply failed to think the subject through. We find no reason for supposing that he had any intention either way except the general one that his words should be interpreted in conformity with law." The authors of the chapter on "Gifts to 'Heirs' and the Like" in American Law of Property, § 22.57, state: *"Also the average testator who uses such words usually does so after he has exhausted his specific desires as to the beneficiaries of his bounty and he has in effect said, 'Now let the law take its course.'"* So, here the testator let the law take its course. The law regarding intestate succession, like any other law, is subject to change by the legislature from time to time. By leaving the determination of a taker under his will to the law regarding intestate succession, the testator took a chance that such law might be changed before the gift took effect.

. . . .

In *Gilliam v. Guaranty Trust Co.*, 186 N.Y. 127[,] 138 [78 N.E. 697], the court stated: "Of course the donor when he executed his deed could not apprehend that at a given date many years hence statutes would be enacted providing for the adoption of children and conferring upon them the right of inheritance. *But, upon the other hand, he must be assumed to have known that the lines of inheritance were governed by statute and at any time could be changed. He was evidently interested in providing for the life beneficiary in a certain definite manner down to the moment of her death, and did so. But after that apparently he had no desire to limit the succession to his real estate to any particular definite line of persons. He directed generally that it should go to her heirs at law; that is, to the persons whom the law should designate as her heirs when the time arrived. He threw the responsibility of selection upon the law."* This case involved a deed of trust and not a will. But the applicable principle is the same.

*Id.* at 138–39 (emphases added). As a result, the *Holt* court held that, after Christopher's death, Alberta became entitled to such interest as testator's heir per stirpes through him. *Id.* at 140.

As previously indicated, unlike *Holt*, this court is faced with determining whether Bender is the "issue" of her natural father, Lawrence, for purposes of claiming as a beneficiary under the trusts. "When the donor of property describes the beneficiaries thereof as 'issue' or 'descendants' of a designated person, the primary meaning of such class gift term is determined by substituting in place of the class gift term the words 'children' and 'children of children' and 'children of children of children,' etc. of the designated person[.]" *In re Trust Estate of Dwight*, 80 Hawai'i 233, 235–36, 909 P.2d 561, 563–64 (1995) (emphasis omitted) (quoting *Restatement (Second) of Prop.: Donative Transfers* § 25.9 (1988)); *see also* 3 Richard R. Powell, *Powell on Real Property* § 30.08 at 30–107 (2004) ("In a gift to the 'issue' or 'descendants' of a certain person, these terms are understood by reference to the definition and constructional rules for the term 'children.' Thus, the terms 'children,' 'children of children,' and so forth are substituted for 'issue' and 'descendants.'"). Indeed, "[t]he term 'issue,' shorn of any and all judicial constructions and taken in its ordinary and popular sense as used in respect to pedigree ..., is definitely a general term synonymous with children, progeny, offspring, descendants, etc." *O'Brien v. Walker*, 35 Haw. 104, 109 (1939).

The term "heirs," however, is a technical term used to designate persons who would, by statute, succeed to an estate in case of intestacy. *See* HRS § 560:1–201 (Supp.1997) (defining "heirs" as "persons, including the surviving spouse or reciprocal beneficiary and the State, who are entitled under the statutes of intestate succession to the property of a decedent"). In other words, the primary meaning of the term "heirs" is dependent on statutes governing intestate succession; the term "issue" lacks this statutory factor. *See* 3 *Powell on Real Property* at 31–1. Thus, the terms "issue" and "heirs" are not synonymous and do not lead to the same construction and legal result. *See O'Brien,* 35 Haw. at 110–11. Accordingly, *Holt* is inapposite.[5]

"It is well-settled that a will speaks from the time of testator's death, and that what is spoken *is subject to the laws in force at that time.*" *In re Estate of Christian,* 65 Haw. 394, 397, 652 P.2d 1137, 1140 (1982) (emphasis added) (citations omitted). Consequently, we hold that the law in effect at the time of Medeiros's death in 1946 applies in determining whether Bender is a beneficiary under the testamentary trust. *Cf. Damon,* 76 Hawai'i at 124, 869 P.2d at 1343 (when construing a trust, this court is guided by principles relating to the interpretation of trusts as well as those relating to the interpretation of wills).

With respect to the life insurance trust, "[c]onsistent with the rule of construction of wills, unless the language shows a contrary intent, the language of an *inter vivos* trust should be construed according to the law in effect at the time the trust is executed." *McGehee v. Edwards,* 268 Va. 15, 597 S.E.2d 99, 102 (2004); *see also Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Phelps,* 392 F.Supp. 313, 319 (N.D.Ill. 1975) ("In order to ascertain the intent of the settlor, it is necessary to look to the law applicable at the time the trust was executed, . . . presuming the settlor to have known the law, and to have executed the trust in con-

formity therewith." (Citation omitted.)); *Ohio Citizens Bank v. Mills,* 45 Ohio St.3d 153, 543 N.E.2d 1206, 1209 (1989) ("[W]hen construing an *inter vivos* trust, . . . a court should determine the intent of the settlor in light of the law existing at the time of the creation of the trust, since an *inter vivos* trust speaks from the date of its creation— not the date upon which the assets are distributed." (Citation omitted.)). "Such a rule recognizes that the interests of the trust beneficiaries accrue when the trust is executed and protects those interests." *McGehee,* 597 S.E.2d at 102. Accordingly, we hold that the law in effect at the time Medeiros executed the life insurance trust in 1942 applies in determining whether Bender is a beneficiary thereunder.

As previously indicated, the circuit court ruled that the applicable law to *both* the testamentary trust and the life insurance trust is the law in 1942 when the trusts were executed. However, the circuit court also pointed out that the applicable law in effect in 1942 is substantively the same as the applicable law in effect in 1946 when Medeiros died. Indeed, pursuant to Revised Laws of Hawai'i (RLH) § 4527 (1935), which was in effect in 1942:

> **Effect of adoption.** *An adopted child shall inherit estate undisposed of by will from its adopting parents the same as if he were the natural child of the adopting parents, **and shall not inherit estate from his natural parents;** the adopting parents of such child shall inherit estate undisposed of by will from the child the same as if the adopting parents had been his natural parents, and the natural parents of the child and their relatives shall not inherit estate from him; and for all other purposes an adopted child and his adopting parents shall sustain towards each other the legal relation of parents and child and shall have all the rights and be subject to all the duties of that relation the same as if the child were the natural child of such parents, and all such duties and rights as*

---

5. For the same reason, the other cases cited by Bender (*i.e., Auld v. Andrade,* 31 Haw. 1 (1929), *Crescent City Motors, Ltd. v. Nalaielua,* 31 Haw. 418 (1930), and *In re Trust of Dreier,* 32 Haw. 32 (1931)), construing the word "heirs" in relation to delayed gifts, are inapposite to the present issue.

*between such child and its natural parents shall cease from the time of the adoption.* (Emphases added.) This provision was re-numbered in 1945 as RLH § 12278 and is otherwise identical to RLH § 12278, which was in effect in 1946. Consequently, not-withstanding its ruling that the law applicable to both the testamentary trust and the life insurance trust is the law in 1942 when the trusts were executed, any error arising from this ruling is harmless. Under either RLH § 4527 (1935) or RLH § 12287 (1945), the circuit court reached the correct result in ultimately ruling that "Bender's adoption by her stepfather precludes her from being considered Lawrence['s] 'issue' for purposes of inheriting from her natural grandfather's trust estate."[6]

### B. *Applicability of the Ohana Adoption Statute*

In asserting that the circuit court erred in failing to give effect to the ohana adoption statute, HRS § 560:2–114, *see supra* note 3, Bender argues in relevant part:

> Lawrence P. Medeiros died on July 13, 2000. The relevant law in effect on July 13, 2000, included the 1992 "ohana adoption" statute and 1996 amendments to the Uniform Probate Code. The law expressly gave "child" and "issue" status to persons in [Bender]'s situation, those who had been

6. Urging this court to apply the law in effect when Lawrence died in 2000, Bender argues that "the members of the class of 'issue' of Larry P. Medeiros could not be determined until Larry P. Medeiros died on July 13, 2000. Larry Medeiros could have fathered more children before his death." Bender's argument misses the mark. Irrespective of the fact that the members of the class of Lawrence's "issue" may not have closed until his death, Medeiros's intention and the qualification of those who were to take under the trusts is, as discussed *supra*, determined, with respect to the testamentary trust, according to the law in effect when Medeiros died in 1946, and, with respect to the life insurance trust, according to the law in effect in 1942 when the life insurance trust was executed.

7. The ohana adoption statute was originally codified as HRS § 560:2–109, which provided in relevant part that:

> **Meaning of child and related terms.** (a) If, for purposes of intestate succession, a relationship of parent and child must be established to determine succession by, through, or from a person:

adopted in their minority by the spouse of a natural parent[ ]....

■ As previously noted, HRS § 560:2–114(b)(2) provides in pertinent part that "[a]doption of a child during such child's minority by the spouse . . . of a natural parent of the child, . . . has no effect on the relationship between the child and either natural parent, for the limited purpose of interpretation or construction of a disposition in any will, trust, or other lifetime instrument, whether executed before or after the order of adoption." However, as discussed in detail *supra*, Section III.A, the applicable law in determining whether Bender is the "issue" of her natural father, Lawrence, for purposes of claiming as a beneficiary under the trusts is not the law in effect when Lawrence died in 2000 but, rather, with respect to the testamentary trust, the law in effect in 1946 when Medeiros died and, with respect to the life insurance trust, the law in effect in 1942 when Medeiros executed the life insurance trust. Furthermore, there is nothing in the language or legislative history of HRS § 560:2–114 or of its predecessor HRS § 560:2–109 (1992),[7] or in any other provision of Hawaii's Uniform Probate Code (UPC), to indicate that the legislature intended for the ohana adoption statute to apply retroactively.

■ Bender claims that

(1) An adopted person is the child of an adopting parent and not of the natural parents except that:
 (A) Adoption of a child by the spouse of a natural parent has no effect on the relationship between the child and that natural parent; and
 (B) Adoption of a child during such child's minority by the spouse of a natural parent of the child, by a natural grandparent, aunt, uncle, or sibling of the child or the spouse of a natural grandparent, aunt, uncle, or sibling of the child has no effect on the relationship between the child and either natural parent, for the limited purpose of interpretation or construction of a disposition in any will, trust, or other lifetime instrument, whether executed before or after the order of adoption, and for the purposes of determining the heirs at law of a natural family member of the child.

. . . .

(Bold emphasis in original.) (Underscored emphases added.)

[i]n enacting § 560:2–109, the Legislature pointedly avoided restricting application to adoptions arising after its effective date. When the Legislature wants to restrict application of a statute to prospective situations, it will expressly do so[ ]. . . . By effect of § 560:2–109, in 1992 [Bender] obtained the right to be considered the issue of Lawrence P. Medeiros and the grandchild of Joseph P. Medeiros under the [trusts][ ]. . . .

This argument lacks merit. The common law rule disfavors retroactive application of laws. *Christian,* 65 Haw. at 398, 652 P.2d at 1140 (citations omitted). This rule is codified in HRS § 1–3 (1993), which provides that "[n]o law has any retrospective operation, unless otherwise expressed or obviously intended." Thus, Bender incorrectly states that, "[w]hen the Legislature wants to restrict application of a statute to *prospective* situations, it will expressly do so." (Emphasis added.)

Moreover, when the legislature enacted HRS § 560:2–114 in 1996, *see* 1996 Haw. Sess. Laws Act 288, § 1 at 835, it expressly stated with regard to the effectiveness of this and other amendments to the UPC that:

SECTION 5. Effect and transition. (a) The amendments made by this Act shall take effect on January 1, 1997.

(b) Except as provided elsewhere in this Act, on [January 1, 1997 [8]]:

(1) The amendments made by this Act apply to any governing instruments executed by decedents dying thereafter;

(2) *The amendments made by this Act apply to any proceedings in court then pending or thereafter commenced regardless of the time of the death of decedent* **except:**

(A) *Parts 1 and 2 of Article II (relating to intestate succession and elective share) shall apply only to the estates of decedents dying after [January 1, 1997 [9]];* and

(B) To the extent that in the opinion of the court the former procedure should be made applicable in a particular case in the interest of justice or because of infeasibility of application of the procedure of this Act;

. . . .

(4) An act done before the effective date in any proceeding and any accrued right is not impaired by this Act. If a right is acquired, extinguished, or barred upon the expiration of a prescribed period of time which has commenced to run by the provisions of any statute before the effective date, the provisions shall remain in force with respect to that right; and

(5) Any rule of construction or presumption provided in this Act applies to instruments executed before the effective date unless there is a clear indication of a contrary intent.

1996 Haw. Sess. Laws Act 288, § 5 at 920 (emphases added). Inasmuch as HRS § 560:2–114 is part of Part 1 of Article II, the legislature clearly intended that it only apply to the estates of decedents dying *after* January 1, 1997. As previously indicated, Medeiros died in 1946.

Based on the foregoing, HRS § 560:2–114 does not apply to either the testamentary trust or the life insurance trust for purposes of determining whether Bender is the "issue" of Lawrence. Accordingly, we hold that the circuit court did not err in failing to apply HRS § 560:2–114.[10]

---

**8.** In 1997, the legislature amended Section 5 of Act 288 to change this date from July 1, 1997 to January 1, 1997. 1997 Haw. Sess. Act 244, § 16 at 494.

**9.** In 1997, the legislature amended Section 5 of Act 288 to change this date from July 1, 1997 to January 1, 1997. 1997 Haw. Sess. Act 244, § 16 at 494.

**10.** We note that Bender raises the issue whether she should be considered Medeiros's "grandchild" under the terms of the trusts, each of which provide for distribution of the trust corpus upon termination thereof to Medeiros's "grandchildren then surviving." The circuit court did not reach this issue; regardless, inasmuch as the trusts have not yet terminated, this issue is not ripe for adjudication.

## IV. *CONCLUSION*

For the foregoing reasons, we affirm the first circuit court's (1) September 12, 2001 order granting petition for instructions and (2) October 1, 2001 final judgment closing trust proceedings.[11]

11. Pursuant to Hawai'i Rules of Appellate Procedure (HRAP) Rule 38 (2004), "[i]f a Hawai'i appellate court determines that an appeal decided by it was frivolous, it may, after a separately filed motion or notice from the appellate court and reasonable opportunity to respond, award damages, including reasonable attorneys' fees and costs, to the appellee." In the concluding paragraph of his answering brief, Joseph urges this court to "remand the case with instructions to determine that [Bender] should be responsible for payment of ... legal fees and costs incurred in connection with the proceeding, or, in the alternative, that the payment of ... legal fees and costs be paid by the Trusts[]...." Inasmuch as Joseph fails to present any discernible argument regarding his request for attorneys' fees and costs, we disregard it. *See Acoba v. General Tire, Inc.*, 92 Hawai'i 1, 10, 986 P.2d 288, 297 (1999) ("It is well settled that a general assignment of error which does not set out separately the particulars of each error intended to be urged, is insufficient and does not call for consideration by this court.") (Brackets, internal quotation marks, and citation omitted.); HRAP Rules 28(b)(7) and 28(c) (2004).